**UNITED STATES of America, Plaintiff-Appellant,**

**v.**

**J. F. HATTAWAY et al., Defendants-Appellees.**

**No. 73–1439.**

United States Court of Appeals, Fifth Circuit.

Jan. 9, 1974.

R. Jackson B. Smith, Jr., U. S. Atty., Henry L. Whisenhunt, Jr., Asst. U. S. Atty., Augusta, Ga., Walter H. Fleischer, Donald Etra, Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Will Ed Smith, Eastman, Ga., for J. F. Hattaway and Bertha H. Hattaway.

Before GODBOLD, DYER and GEE, Circuit Judges.

DYER, Circuit Judge:

In this appeal we are called upon to determine whether the Small Business Administration is required to pay attorney's fees in addition to the defaulted principal and interest of a promissory note secured by mortgage when, although the holder had actual notice of the fee interest of the SBA and its desire to pay the indebtedness, statutory notice to pay within ten days to avoid attorney's fees was given by the holder only to the maker. The district court entered judgment against the SBA. We reverse.

In January of 1966, Edwin Rocker gave J. F. Hattaway a $50,000 note

which included a provision for payment of 15% attorney's fees for collection of the debt after maturity, a provision which could be enforced only if the creditor complied with Ga.Code Ann. § 20–506. This statute makes enforcement of such a provision contingent on the creditor's giving written notice that the debtor can avoid the added expense of attorney's fees by paying the principal and interest then due within ten days of receipt of the § 20–506 notice.[1]

Rocker's note to Hattaway was secured by a mortgage on certain real estate in Wheeler County, Georgia. A second mortgage lien on the same land was granted by Rocker to the SBA through a series of deeds from 1967 to 1969. By 1972, the SBA had foreclosed the second mortgage, purchased the property subject to the Hattaway mortgage, and had decided to buy out Hattaway's interest by paying off Rocker's note which had been in default since October 15, 1968. An SBA plan to deliver its check to Hattaway in early January of 1972 was aborted, however, when it was learned that the Hattaways were being sued by Swift Agricultural Chemicals Corp. to set aside as a fraudulent conveyance a transfer of the note and mortgage by Hattaway to his wife in November of 1970. The SBA concluded that the Swift litigation raised the possibility of double liability if payment were made to the Hattaways, hence the government check was cancelled.

Hattaway was present at the SBA foreclosure sale on March 7 and was then advised that the SBA intended to pay off the Rocker indebtedness. An SBA letter to the Hattaways dated March 14 requested an itemization of Rocker's obligation as of March 31, 1972. Another letter from the SBA, received by the Hattaways on March 17, stated: "It is expected that notice of any action taken with regard to your Deed to Secure Debt or the indebtedness secured thereby, will be directed to the attention of this writer at the offices of Small Business Administration . . . ." However, on March 15 the Hattaways had given Rocker, *but not the SBA,* notice that unless the debt were paid within ten days a 15% attorney's fees charge would be added to the amount due. In a letter dated March 29, four days after the expiration of the statutory period, they informed the SBA of having given Rocker the § 20–506 notice, and, in response to the SBA's request for an itemization of Rocker's obligation, included the sum of $5,635.45 for "attorney fees as stipulated in note."

Immediately thereafter the SBA filed an interpleader in the Swift-Hattaway litigation and paid into court the principal and interest which Rocker then owed the Hattaways. That sum was ultimately received by Swift under a consent judgment. The district court ordered the SBA to pay the amount of the claimed attorney's fees into court, and later ordered the $5,635.45 paid to the

---

1. The relevant section of Ga.Code Ann. § 20–506 provides:

Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable, and collectible as a part of such debt, if such note or other evidence of indebtedness be collected by or through an attorney after maturity, subject to the following provisions:

\*   \*   \*   \*   \*

(c) The holder of the note or other evidence of indebtedness, or his attorney at law, shall, after maturity of the obligation, notify in writing the maker, indorser or

party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, indorser or party sought to be held on said obligation has 10 days from the receipt of such notice to pay the principal and interest without the attorney's fees. If the maker, indorser or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement. The refusal of a debtor to accept delivery of the notice hereinbefore specified shall be the equivalent of such notice.

Hattaways. From that order came this appeal.

The only issue is whether the court below was correct in concluding: "There is nothing in the record which would justify the Court in denying the attorney's fees to the Hattaways." The Hattaways strenuously urge that by giving notice to Rocker, they did all that was required by Georgia law to entitle them to enforcement of the attorney's fees provision. The SBA counters, however, that the Hattaways had no intention of collecting the debt from Rocker, but rather gave the § 20–506 notice to the named but nominal debtor in order to enhance their recovery from the SBA as the real party in interest. The government's position that such a "tactic" constitutes an impermissible use of Georgia law is strongly supported by Security Mortgage Co. v. Powers, 1928, 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236, which considered a predecessor statute to § 20–506 and in which Mr. Justice Brandeis said:

> It is asserted that the suit against the [debtor] was brought, not for the purpose of collecting the debt, but solely for the purpose of enhancing the amount which was obtainable without suit . . . .. If this is true, the statutory provision designed for the protection of the debtor was employed solely as a means of oppression. We will not assume, in the absence of a decision by a Georgia court, that the Legislature intended to permit such use.

Id. at 159, 49 S.Ct. at 87.

Cognizant of the Supreme Court's admonition that the attorney's fees statute is not to be given mechanical application, the Hattaways rely on two Georgia cases in support of their contention that notice was required to be given only to the debtor and not to some third party, Woods v. State, 1963, 109 Ga.App. 225, 136 S.E.2d 18, and Guarantee Trust and Banking Co. v. American National Bank, 1915, 15 Ga.App. 778, 84 S.E. 222. It is true that in neither case did the Georgia

courts require notice to be given to anyone other than the original debtor even though a third party was required to pay attorney's fees. The facts in each case, however, can be distinguished from those in the present controversy. In *Guarantee Trust*, a receiver was appointed for the debtor, but the attorney's fees notice was given *before* the appointment and thus before the receiver became the party interested in paying off the debt. From the *Woods* opinion it is difficult to ascertain whether the § 20–506 notice was given before or after a receiver became involved, but there is no indication that at the time notice was given the creditor had any knowledge of a third party's interest in the debt.

■■ By contrast, the record in the case *sub judice* convinces us that the Hattaways had no hope of collecting the debt from Rocker at the time he was given the § 20–506 notice. The SBA clearly was the party from whom the Hattaways expected to collect. Apparently not content with their good fortune in finding a party willing to pay a previously uncollectable obligation, they attempted to invoke the statutory provision to entitle them to a bonus of attorney's fees from the SBA.

We entertain no doubt that as soon as it became clear to the Hattaways that the SBA was the real party in interest, they were under an equitable duty to give the § 20–506 notice not only to the nominal debtor, but to the SBA as well. To hold otherwise would be to condone fraud by silence.

> A failure to speak is fraud by silence, where one uses silence for the purpose of gaining an unconscionable advantage over another by concealing for his own benefit information which in equity and good conscience should be communicated.

Reeves v. B. T. Williams & Co., 1925, 160 Ga. 15, 127 S.E. 293. If there was any doubt about the SBA's entitlement to notice after it had repeatedly advised the Hattaways of its interest in extinguishing Rocker's debt, that doubt was

certainly dispelled when the Hattaways received the letter specifically asking that it be kept posted of any action taken either on the mortgage or on the underlying obligation. Because they were silent when there was an equitable duty to speak, the Hattaways are estopped from taking advantage of the attorney's fees statute.

Reversed.

GODBOLD, Circuit Judge, dissents.