UNITED STATES of America, Plaintiff,

v.

James L. ALLEN and H. W. Allen, Defendants.

Civ. A. No. 81–84–VAL.

United States District Court,
M. D. Georgia,
Valdosta Division.

March 11, 1982.

---

Gregory J. Leonard, Macon, Ga., for plaintiff.

Carlton A. Fleming, Jr., Tifton, Ga., for defendants.

OWENS, District Judge:

This case presents the question of whether or not the plaintiff holder of a second deed to secure debt in the course of purchasing defendants' first deed to secure debt and promissory notes must, in addition to outstanding principal and interest, pay 15% attorneys fees on account of 1933 Ga. Code § 20–506 [1] as applied to the stipulated

---

1. "20–506 (4252) Attorney's fees in notes, etc., in addition to interest

Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable, and collectible as a part of such debt, if such note or other evidence of indebtedness be collected by or through an attorney after maturity, subject to the following provisions:

(a) If such note or other evidence of indebtedness provides for attorney's fees in some specific per cent. of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 per cent. of the principal and interest owing on said note or other evidence of indebtedness.

(b) If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees, without specifying any specific per cent., such provision shall be construed to mean 15 per cent. of the first $500 principal and interest owing on such note or other evidence of indebtedness, and 10 per cent. of the amount of principal and interest owing thereon in excess of $500.

(c) The holder of the note or other evidence of indebtedness, or his attorney at law, shall, after maturity of the obligation, notify in writing the maker, indorser or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and

undisputed facts. The parties have submitted their briefs of law, and the question is ready for decision by the court without a jury.

### The Facts

The stipulated facts show that on September 13, 1978, James William Bush purchased 1,180 acres of land in Coffee County, Georgia from defendants James L. Allen and H. W. Allen, and in payment of some unspecified part of the sales price executed two promissory notes totalling $330,000 principal plus interest and a deed to secure debt to which copies of said notes were attached as exhibits. Said deed to secure debt and notes were duly recorded in the office of the Clerk of the Superior Court of Coffee County, Georgia. Each note provided:

"In the event of default in payment of this note, and if the same is collected by an attorney at law, the undersigned agrees to pay all costs of collection."

On November 26, 1980, defendants James L. and H. W. Allen signed the following agreement:

FORM FHA-GA-427-3
(8-7-74)

AGREEMENT BY HOLDER OF PRIOR DEED(S)
TO SECURE DEBT

KNOW ALL MEN BY THESE PRESENTS: That

WHEREAS, __James L. Allen and H. W. Allen_____ hereinafter referred to as the "Prior Lienholder", is the owner and holder of the following described deed(s) to secure debt, or record in_____Coffee_____County, Georgia:

| Date | Name(s) of Grantor(s) | Book | Page |
|------|----------------------|------|------|
| 9-13-78 | James William Bush | Real Estate Records 78-2394 | |

which said instrument(s) of security may now be or hereafter be subject to foreclosure; and

WHEREAS, THE UNITED STATES OF AMERICA, acting through Farmers Home Administration, United States Department of Agriculture, hereinafter referred to as the "Government" has been or will be requested by the above named Grantor(s) to make or insure a loan which will be secured by a junior deed to secure debt on the real estate described and conveyed by the Prior Lienholder"s deed(s) to secure debt; and

WHEREAS, in order for the Government to make the loan it is necessary that the Prior Lienholder covenant and agree to certain items that will modify the rights set forth in his or its deed(s) to secure debt.

NOW, THEREFORE, the undersigned Prior Lienholder, for and in consideration of the premises and as an inducement to the Government to make or insure the loan aforesaid, does hereby promise and agree; (mark with an "X" the appropriate box(es).

/ X / To give the Government written notice of the commencement of any proceedings to foreclose the deed(s) to secure debt held by the undersigned as aforesaid, by delivering in person or by mailing such notice to the

that such maker, indorser or party sought to be held on said obligation has 10 days from the receipt of such notice to pay the principal and interest without the attorney's fees. If the maker, indorser or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement. The refusal of a debtor to accept delivery of the notice hereinbefore specified shall be the equivalent of such notice.

(d) Obligations to pay attorney's fees contained in security deeds and bills of sale to secure debt shall be subject to provisions of the section where applicable.

(Acts 1890-1, p. 221; 1900, p. 53; 1946, pp. 761, 766; 1953, pp. 545, 546; 1957, p. 264; 1968, p. 317.)"

State Director, Farmers Home Administration, United States Department of Agriculture, Athens, Georgia, at least ten (10) days prior to the commencement of such action; and the undersigned does further agree that this agreement shall be irrevocable, that it shall be binding upon the heirs and assigns of the undersigned and that upon any assignment of the deed(s) to secure debt held by the undersigned as aforesaid, the undersigned will endorse, on the fact of such instrument(s) being assigned the following: "ACTUAL NOTICE OF COMMENCEMENT OF FORECLOSURE PROCEEDINGS SHALL BE GIVEN TO STATE DIRECTOR, FARMERS HOME ADMINISTRATION, U. S. DEPARTMENT OF AGRICULTURE, ATHENS, GEORGIA, IN ACCORDANCE WITH AGREEMENT DATED_____,19_____, AND RECORDED IN DEED BOOK _____, AT PAGE_____, IN THE PUBLIC RECORDS OF _____ COUNTY, GEORGIA", and will insert in the appropriate blank spaces provided therefore the date of the notice agreement and the recording data, whereupon the undersigned will subscribe his or its name thereto.

[ X ] To postpone the lien or claim, operation and effect of the security instrument described in the first paragraph of this agreement to the lien or claim, operation and effect of the deed to secure debt to be taken by the Government as security for the loan aforesaid, as to all advances made by the Prior Lienholder to Grantor after the date of this agreement; provided, however, that said postponement shall not apply to advances made by Prior Lienholder to pay real estate taxes, property insurance premiums, reasonable attorney's fees and essential repairs as necessary for protection of the security or title thereto.

[ ] ~~To subordinate and relinquish the lien or claim, operation and effect of the security instrument described in the first paragraph of this agreement to the lien or claim, operation and effect of the deed(s) to secure debt to be taken by the Government as security for the loan aforesaid, as to all advances made by the Prior Lienholder to Grantor after the date of this agreement.~~

IN WITNESS WHEREOF, the Prior Lienholder has hereto set his hand and seal or, if a corporation, has caused its corporate name to be hereunto subscribed by its authorized officer(s) and its corporate seal to be hereunto affixed and attested, this _26th_ day of _November_19 _80_.

WITNESSES:

_____          _____
                                                              Individual
_____          _____
Notary Public                                       Corporate

My commission expires:
1/6/83

WITNESSES:

_____          By_____

_____          Title_____
Notary Public

_____          GEORGIA COFFEE COUNTY
                                                        ATTEST:
Corporate Seal                                  FILED FOR RECORD AT
                                                        3:30 O'CLOCK P M
_____          9 Dec 19 80
Notary Public                                    FILE NO
                                                        REAL ESTATE File
                                                        80-2687
                                                        19 Dec 19 80
                                                        Rubye W. Griffin
GA PN 252(8-7-74)                           CLERK OF SUPERIOR COURT

On December 9, 1980, James William Bush obtained an emergency loan totalling $1,430,530.00 from the United States of America acting through the Farmers Home Administration. In addition to executing promissory notes, Mr. Bush, Marlene King Bush, and Neva King Thompson executed a deed to secure debt on seven tracts of land, three of which were those included in defendants' prior, superior deed to secure debt. On March 25, 1981, Mr. Bush obtained an additional $446,100.00 emergency loan secured by a promissory note and a deed to secure debt on the same lands. At the time this lawsuit commenced Mr. Bush was indebted to plaintiff through the Farmers Home Administration in the total amount of $1,876,567.75.

On July 31, 1981, defendant James L. Allen, a certified public accountant, by letter notified Mr. Bush that an annual payment on the note due defendants would be due on September 13, 1981; that the amount of the payment due would be $23,490.00 interest plus $29,000.00 principal; and that on account of defendants' commitments to Tifton banks they would not be able to extend the payment due date.

By letter dated September 17, 1981, and received by Mr. Bush on September 18, 1981, Carlton A. Fleming, Jr. as attorney for the defendants wrote Mr. Bush advising that his note of September 13, 1978, in the amount of $290,000.00 was in default; had been placed with his law firm for collection; and, had a principal and interest balance as of September 13, 1981, of $284,490.00. He further advised Mr. Bush:

"All of the above stated indebtedness having become in default, the provisions of said note relative to the payment of attorneys' fees in addition to principal and interest will be enforced, but you may within ten days after receipt of this letter pay the principal and interest without attorneys' fees.

This notice is given to you in accordance with Section 20–506 of the Georgia Code Annotated.

Very truly yours,
SIMS & FLEMING, P.C.
By: /s/ Carlton A. Fleming, Jr.
    Carlton A. Fleming, Jr.
jha
cc: James L. Allen & H. W. Allen
    P. H. Jowers

CERTIFIED MAIL RECEIPT NO. 0048233"

Mr. P. L. Jowers, to whom a copy of said letter was sent, is County Supervisor of the Douglas, Coffee County, Georgia office of the Farmers Home Administration. The date Mr. Jowers received his copy has not been stipulated. A copy of that letter was not sent to the State Director, Farmers Home Administration, United States Department of Agriculture, Athens, Georgia—the only official of plaintiff set forth in the said November 26, 1980, agreement signed by defendants.

On the same day—September 17, 1981—Mr. Fleming wrote a separate letter to the State Director of the Farmers Home Administration, to wit:

"September 17, 1981
State Director
Farmers Home Administration
United States Dept. of Agriculture
355 East Hancock Avenue
Athens, GA 30601

Re: James William Bush—foreclosure by James L. Allen & H. W. Allen

Dear Sir:
Please be advised that James L. Allen and H. W. Allen will commence proceedings to foreclose the deed to secure debt held by them on the property of James William Bush in Coffee County, Georgia. Notice is hereby given in accordance with the agreement by holder of prior deed to secure debt between James L. Allen and H. W. Allen and The Farmers Home Administration, U. S. Department of Agriculture, dated November 26, 1980, and recorded December 9, 1980, in RE 80–2687 in the public records of Coffee Coun-

ty, Georgia. *Unless payment is made within ten (10) days from the date of this letter,* we will have no other alternative but to institute foreclosure proceedings. Please contact me if you wish to preserve your equity in the property described in our deed to secure debt at RE 78–2394 in the office of the Clerk of Coffee Superior Court.

Yours very truly,
SIMS & FLEMING, P.C.
By:  /s/ Carlton A. Fleming, Jr.
       Carlton A. Fleming, Jr.

jha

CERTIFIED RETURN RECEIPT NO. 0048234

cc:  P. L. Jowers
      Farmers Home Administration
      P. O. Box 1344
      Douglas, GA  31533"

(emphasis added).

With this letter, Mr. Fleming did not send a copy of his letter of the same date to Mr. Bush; neither did he mention the amount of principal and interest then due or defendants' expectation that attorneys fees were to be added if principal and interest were not paid within ten (10) days after receipt.

On September 21, 1981, Mr. Fleming wrote another letter to Mr. P. L. Jowers, to wit:

"September 21, 1981
Mr. P. L. Jowers
Farmers Home Administration
P. O. Box 1344
Douglas, GA 31533

Re:  James L. Allen & H. W. Allen vs.
      James William Bush

William D. Lyles vs. James William Bush

Dear Mr. Jowers:

Enclosed please find two copies of letters which were sent by our office to Mr. Bush declaring his notes to James L. and H. W. Allen and William D. Lyles in default and accelerating the indebtednesses called for in said notes. From these letters you should be able to determine what the payoffs will be on these notes as of October 1, 1981.

As per our telephone conversation last week, Dr. Lyles will accept the sum of $13,701.00 (which represents the payment due 7/1/81, interest on that amount at 18% since 7/1/81, $113.40 advertising costs and $1,000.00 as attorneys' fees) to reinstate Mr. Bush's note and bring it current.

The Allens have not indicated to me whether or not they will allow Mr. Bush to cure the default in his note to them. If you have any questions regarding this matter, please feel free to contact me at your earliest possible convenience.

Yours very truly,
SIMS & FLEMING, P.C.
By:  /s/ Carlton A. Fleming, Jr.
       Carlton A. Fleming, Jr.

jha
encl."

(emphasis added).

As the underlined portion indicates, Mr. Fleming's September 21st letter was in response to Mr. Jowers' request for a payoff figure on defendants' loan to Mr. Bush as of October 1st. Mr. Fleming did not mention attorneys fees in said letter even though it was obvious that more than ten (10) days from receipt by Mr. Bush on September 18th of Mr. Fleming's default letter of September 17th would have expired by October 1st.

On September 25, 1981, the State Director of the Farmers Home Administration wrote Mr. Fleming:

"September 25, 1981
Mr. Carlton A. Fleming, Jr.
Sims and Fleming, P.C.
Attorneys at Law

823 Love Avenue
Tifton, Georgia  31794

Dear Mr. Fleming:

This is in regard to the prior lien foreclosures against the James W. Bush proper-

ties. It has been determined it is in the best interest of Farmers Home Administration to pay off the prior lien foreclosures subject to the sales to be conducted at the courthouse square.

The prior lien foreclosure by Dr. William Lyles is presently being advertised in the paper and the sale is scheduled for October 6, 1981. This office receipted for the 10-day notice on September 8, 1981. The check requested to pay William D. Lyles is in the amount of $76,612.91. This includes a principal amount of $59,895, interest as of October 1, 1981 in the amount of $6,646.31, advertising costs of $113.40, and $9,978.20 in attorney fees. I believe the fee you are accessing in paying off this prior lien is excessive. It is excessive due to the fact that paying off the prior lien eliminates further foreclosure proceedings which would normally be required by you and your client. All that is required is that you prepare the assignment document and meet with the County Supervisor. At this meeting, the County Supervisor will deliver to you the check in exchange for the executed assignment document, the original Promissory Note, and the original Deed to Secure Debt. It appears that you and your client are taking advantage of the situation in requiring that the full 15% collection fee be assessed the Government. This fee is simply not justified.

This office receipted for the 10-day notice on the foreclosure by James L. and H. W. Allen on September 18, 1981. This to [sic] advise you that the government must move to protect its interest by paying off this prior lien foreclosure. This is a letter of commitment that the prior lien will be paid by the government. A check in the amount of $285,682.55 has been requested from the Finance Office. This figure includes a principal amount of $261,000 and interest accrued through October 1, 1981 in the amount of $24,682.55.

Please do not take any further legal action in this case. This letter of commit-ment is given to you to eliminate accessment of attorney fees.

Enclosed you will find copies of the vouchers which were forwarded to the Finance Office requesting the checks. The checks were requested by phone on this date and should be delivered to the County Supervisor in Douglas no later than September 30, 1981. The file has been returned to the County Supervisor, Mr. Pleasant Jowers, and he has been advised to contact you regarding a meeting on October 1, 1981. I suggest that both of these transactions be completed on October 1, 1981 at a place which is mutually agreed upon by you and Mr. Jowers.

As in the past, I am enclosing a complimentary copy of assignment instructions prepared by our Office of General Counsel. These instructions set out what is required by the Government in taking assignments and may be used as a guideline in preparing the assignment documents. If you have questions regarding the instructions, you may contact this office or Mr. Ted Elders with the Office of General Counsel. Mr. Elders' telephone number is noted on the enclosed guidelines. If you have questions regarding this arrangement, you may contact me at 404–546–2162. Your assistance in this matter is appreciated.

Sincerely,

/s/ Orson G. Swindle

ORSON G. SWINDLE, III

State Director

Enclosure"

(emphasis added).

A copy of the issued public vouchers was attached and is in the record as Exhibit "L"—Page 4. It is for $285,682.55 with the payee's name and address shown as "James L. Allen and H. W. Allen, c/o County Supervisor, P. O. Box 1344, Douglas, Georgia 31533."

On September 27, 1981, Mr. Fleming received Mr. Swindle's letter of September

25th. The following day Mr. Fleming responded:

"September 28, 1981

Mr. Orson G. Swindle, III

State Director

Farmers Home Administration

355 East Hancock Avenue

Athens, GA 30610

Re: Foreclosures against James W. Bush

Dear Mr. Swindle:

I am in receipt of your letter of September 25, 1981. My client, Dr. William D. Lyles, is agreeable to selling his note and deed to secure debt from James William Bush to The Farmers Home Administration for the amount of $76,612.91 as outlined in your letter. I will prepare the assignment and deliver it along with the original promissory note and the original deed to secure debt to Mr. Jowers on October 1, 1981, in exchange for your check in the foregoing amount.

With regard to the foreclosure by James L. Allen and H. W. Allen, my clients have indicated to me that they are going to insist on the payment of attorneys' fees in addition to the principal and interest figures outlined in your letter of September 25, 1981. It is our position that the Allens are legally entitled to these attorneys' fees unless payment in full of the principal and interest due under Mr. Bush's note to the Allens is paid within ten (10) days from the date of Mr. Bush's receipt of our notice of default and acceleration. It is our further position that we are not looking to Farmers Home Administration for the payment of this principal, interest and full attorneys' fees, but rather we are looking to the equity in the property which the Allens took as security for the payment of all sums legally due to my clients. The Allens have no legal obligation to sell their note and deed to secure debt to Farmers Home Administration or any other party and unless the full attorneys' fees are paid, we will be forced to sell the property at public auction to obtain the full amount owed to my clients. Neither I nor the Allens have ever given any employee of Farmers Home Administration any indication that we would sell our note and deed to secure debt for the principal and interest alone.

You may construe this letter as an offer on the part of James L. Allen and H. W. Allen to sell to Farmers Home Administration their note and deed to secure debt from James William Bush for the total sum of $328,534.93, which represents principal in the amount of $261,000.00, interest in the amount of $24,682.55, and attorneys' fees in the amount of $42,852.38. Of course, if we do not hear from you prior to October 2, 1981, we will be forced to protect the interests of the Allens by running a notice of public sale in the Coffee County legal organ which would result in a public auction of the properties on November 3, 1981. Therefore, the foregoing offer is only good until October 2, 1981, and subsequent to that date, any offer to sell our note and deed to secure debt would also include the costs for running the legal advertisement.

I will expect to hear from Mr. Jowers immediately regarding the meeting on October 1, 1981, to close out the Lyles transaction, and I look forward to hearing from you prior to October 2 with regard to whether or not Farmers Home Administration is willing to purchase the Allen note and deed to secure debt.

Yours very truly,

SIMS & FLEMING, P.C.

By: /s/ Carlton A. Fleming, Jr.
    Carlton A. Fleming, Jr.

jha

cc: Mr. P. H. Jowers

RETURN RECEIPT NO. 0048236"

(emphasis added).

On October 1, 1981, Mr. Jowers tendered a United States check for the principal and interest due on defendants' deed to secure debt to Mr. Fleming and Mr. Fleming refused to accept it.

On October 2, 1981, the Farmers Home Administration received Mr. Fleming's letter of September 28th.

Non-judicial foreclosure was commenced in accordance with the provisions of the defendants' deed to secure debt and Georgia law by public advertisement of intent to sell the subject real property at public outcry on the first Tuesday in November—November 3, 1981. The first advertisement appeared on October 7th and thereafter on the 14th, 21st, and 28th. On October 29th the United States filed its complaint and tendered $285,682.55 into the registry of the court. The court, after hearing from counsel for the plaintiff and defendants by conference telephone call, preliminarily enjoined the advertised non-judicial foreclosure sale. Thereafter the parties presented a consent order by which the tendered funds were paid to the defendants without prejudice to their claim of attorneys fees, and defendants' deed to secure debt and promissory notes were assigned to the United States.

### Other Facts

Defendants' counsel, Mr. Fleming, verbally advised the court that the defendants have agreed that the entire amount of attorneys fees—15% of $285,682.55—if awarded shall in its entirety be paid to him as attorneys fees.

### The Law

#### I. *"Collected by or through an attorney"*

Georgia Code § 20–506 applies to "note[s] or other evidence of indebtedness" only "if such note or other evidence of indebtedness *be collected by or through an attorney* after maturity..."

The threshold question in this case is whether or not the series of letters written by Mr. Fleming as defendants' attorney constitutes the collection by or through an attorney that this Georgia statute contemplates as being sufficient to entitle an attorney to the substantial attorneys fees in question.

The only reported opinion that sheds any light on this question is *Strickland v. Williams*, 215 Ga. 175, 109 S.E.2d 761 (1959). Appellant Strickland, after a voluntary receivership petition was filed in Lowndes Superior Court and a temporary receiver appointed, delivered collateral and choses in action assigned to him by the debtor, to the temporary receiver. Appellant Strickland then intervened and filed a copy of debtor's note and assignment of collateral to him. A permanent receiver was appointed; Strickland then amended to ask for possession and control of his collateral; and thereafter Strickland filed a third amendment giving notice that the Code § 20–506 authorized provision for attorneys fees in his note would be enforced. The receiver demurred to Strickland's claim for attorneys fees and then paid the principal and interest in full. After said payment the demurrer was sustained or granted. As to appellant Strickland's appeal of the denial of attorneys fees the Supreme Court of Georgia stated:

"2. Code (Ann.) § 20–506 pertaining to the obligation to pay attorney's fees contained in promissory notes was amended by an act of the General Assembly approved March 4, 1953 (Ga.L.1953, Jan.-Feb. Sess., p. 545). Under the amendment, obligations to pay attorney's fees upon any note or other evidence of indebtedness are valid and enforceable 'and collectible as a part of such debt, if such note or other evidence of indebtedness be collected by or through an attorney after maturity.'

"Under a contract to pay attorney's fees if the note or other obligation 'be collected by or through an attorney,' only a contingent liability is created for the payment of attorney's fees, and no liability for the payment of such fees can or will arise until such time as the contingency which is a condition precedent to the collection of such fees has been fully complied with, and the collection made by the attorney at law. 'Where there is an agreement for the payment of a contingent fee, the happening of the contingency is a condition precedent to the right of the attorney to recovery for his services, and the precise event which was contemplated must happen.' *Byrd v. Clark*, 170 Ga. 669(2), (153 S.E. 737); *Stephens v. Fulford*, 153 Ga. 637 (112 S.E. 894); *Sell-*

ers v. *City of Summerville*, 208 Ga. 361, 367 (67 S.E.2d 137). In *Sellers v. City of Summerville*, supra, (p. 366 [67 S.E.2d 137]) it is said: 'When a plaintiff's right to recover on a contract depends upon a condition precedent to be performed by him, he must allege and prove the performance of such condition or allege sufficient legal cause for its nonperformance.'

"In the present case, the bill of exceptions recites that, prior to the order of the court sustaining the receiver's demurrer to the claim of the intervenor for attorney's fees, the receiver had paid to him the principal and interest in full of the amount due him by the insolvent debtor. In his amendment to his intervention, he alleged that he was the legal owner of the notes and collateral delivered by him to the receiver under trust receipt, and he sought a judgment of the court directing the receiver to return to him all notes and receivables held by the receiver under the trust receipt. The debt of the intervenor was not collected by or through an attorney at law, but, on the contrary, the intervenor and his attorney sought to prevent the collection and payment of his claim by the receiver." 215 Ga. at 177, 109 S.E.2d 761.

By this decision the Supreme Court of Georgia in effect said that while intervenor Strickland received his principal and interest after the commencement of the Superior Court receivership proceeding in which he was represented by a lawyer, the payment by the receiver did not result from a court order or judgment secured for him by his attorney. It resulted instead from voluntary payment by the receiver during the pendency of the litigation and was thus not the collection by or through an attorney that satisfies the condition precedent of Code § 20–506.

Implicit in the *Strickland v. Williams* decision is the concept that to justify adding attorneys fees to the principal and interest that the debtor must pay, an attorney must do more than merely act as the agent of the holder of the debt and as a conduit for payment. If this were not the concept, every holder of every debt could ask an attorney to act as his agent and write the debtor to advise of default; the lawyer could include the ten (10) days notice contemplated by § 20–506, and ten (10) days after receipt of notice the debtor would owe the lawyer the attorneys fees that the holder of the debt would otherwise have to pay. *Strickland v. Williams* suggests that the actual collection of the debt as the result of representing the holder of the debt in court, is the collection by or through an attorney that fulfills the condition precedent to the enforcement of § 20–506.

Even more implicit in the *Strickland v. Williams* decision is the concept that to justify the statutory imposition of attorneys fees upon the debtor, the collection by or through an attorney must result from the practice of law—some activity of a lawyer that only a lawyer is legally authorized to perform. If this were not the concept, a lawyer could perform services that a non-lawyer is authorized to perform and collect attorneys fees from the debtor, when for performance of the same service the non-lawyer cannot charge or collect any fees from the debtor.

The practice of law is defined by 1933 Ga.Code § 9–401 which provides:

"The practice of law in this State is defined as representing litigants in court and the preparation of pleadings and other papers incident to any action or special proceedings in any court or other judicial body; conveyancing; the preparation of legal instruments of all kinds whereby a legal right is secured; the rendering of opinions as to the validity or invalidity of titles to real or personal property; the giving of any legal advice; and any action taken for others in any matter connected with the law: Provided, however, that nothing herein contained shall prevent any corporation, voluntary association, or individual from doing any act or acts hereinabove set out, to which said persons are a party, but in preparing and filing affidavits in attachments and prosecuting such proceedings, it shall be un-

lawful for the plaintiffs to act through any agent or employee that is not a duly licensed attorney-at-law. Nor shall any bank be prohibited from giving any advice to its customers in matters incidental to banks or banking. Nor shall any person, firm, or corporation be prohibited from drawing any legal instrument for another person, firm, or corporation, providing it is done without fee and solely at the solicitation and request and under the direction of the person, firm, or corporation desiring to execute such instrument: Provided, that a title insurance company may prepare such papers as it thinks proper, or necessary, in connection with a title which it proposes to insure, in order, in its opinion, for it to be willing to insure such title, where no charge is made by it for such papers. (Acts 1931, pp. 191, 194; 1937, pp. 753, 754; 1976, p. 1511, eff. July 1, 1976.)"

The constitutional validity of this statute has been upheld, *Georgia Bar Assn. v. Lawyers Title Ins. Corp.*, 222 Ga. 657, 151 S.E.2d 718 (1966), so in this state it is—with statutory exceptions found in subsequent code sections not here relevant—a definitive statute that can be relied upon.

Applying this court's concept of *Strickland v. Williams* and the Code § 9–401 definition of the practice of law to the facts of this case:

■ 1. Mr. Fleming, in writing the debtor and the Farmers Home Administration, was not doing something that only a practicing lawyer is authorized to do in this state. *See, Georgia Bar Assn. v. Lawyers Title Ins. Co., supra.* As such, even though Mr. Fleming is a lawyer he was not—technically speaking—practicing law when he corresponded with the debtor and the Farmers Home Administration.

2. Even if Mr. Fleming were practicing law when he wrote the debtors and the Farmers Home Administration, without commencing judicial or non-judicial foreclosure or any other type of court proceeding, Mr. Fleming received a letter of commitment from the Farmers Home Administration and a proffered check on October 1st for the principal and interest then due defendants. Measured by *Strickland v. Williams*, Mr. Fleming did not begin to collect this debt as the word "collect" is used in § 20–506.

II. *The Farmers Home Administration September 25, 1981, Letter.*

■ The United States argues that the Farmers Home Administration letter of September 25, 1981, constituted a valid tender under Georgia law of principal and interest to the defendants; that the letter was received by Mr. Fleming on September 27th—the ninth day after debtor's receipt on September 18th of Mr. Fleming's letter of default; and that even if Mr. Fleming otherwise satisfied the statutory criteria of § 20–506, a valid tender equivalent to payment was made within ten (10) days and no attorneys fees can thus be assessed.

Defendants vigorously argue that said September 25th letter, because it does not say that payment will be made within the ten-day period after receipt by the debtor of Mr. Fleming's letter, constitutes nothing more than a statement of future intention to make a tender rather than the "actual, present bona fide offer to pay" that is required.

Plaintiff and defendants rely on *Jolly v. Jones*, 201 Ga. 532, 40 S.E.2d 558 (1946), which states:

"1. In order to support a suit by a purchaser for specific performance of a contract for the purchase and sale of land, it must be made to appear that before the institution of the action the purchaser had paid the purchase-money in accordance with the terms of the contract, or else had made an actual unconditional tender thereof, or that such a tender had been waived. *Terry v. Keim*, 122 Ga. 43 (49 S.E. 736); *Roberts v. Mayer*, 191 Ga. 588(1) (13 S.E.2d, 382).

·"2. While under the provisions of the Code, § 20–1105, the rule of the common law that an actual production of the money must be shown (see *McGehee v. Jones*, 10 Ga. 127, 132) has to that extent been relaxed—since if the tender is in money

'the coin need not be actually presented, unless demanded'—nevertheless, *there must be an actual, present bona fide offer to pay*; and such requirement is not met by merely evidencing a willingness to pay, or by an offer or intention to make a tender. *Baldwin v. McLendon*, 164 Ga. 387 (138 S.E. 775); *Pope v. Thompson*, 157 Ga. 891(2) (122 S.E. 604); *Payne v. Power*, 140 Ga. 759 (79 S.E. 771)...." (emphasis added).

The already quoted Farmers Home Administration letter of September 25th is signed by the State Director of the Farmers Home Administration. In particular, note the following paragraph of that letter:

"This office receipted for the 10-day notice on the foreclosure by James L. and H. W. Allen on September 18, 1981. This to [sic] advise you that the government must move to protect its interest by paying off this prior lien foreclosure. *This is a letter of commitment that the prior lien will be paid by the government. A check in the amount of $285,682.55 has been requested from the Finance Office.* This figure includes a principal amount of $261,000 and interest accrued through October 1, 1981 in the amount of $24,682.55. Please do not take any further legal action in this case. *This letter of commitment is given to you to eliminate accessment of attorney fees.*" (emphasis added).

A copy of the issued public voucher for the total principal and interest due as of October 1st was enclosed and on the second page Mr. Fleming was advised that the County Supervisor would contact him to arrange an October 1st meeting and it was suggested that the transactions be completed on October 1, 1981, at a mutually agreed upon place. Instructions for preparation of assignment forms were enclosed.

Title 7, U.S.C. § 1981, authorizes the Secretary of Agriculture to delegate authority to various officials of the Farmers Home Administration and to "administer his powers and duties through such national, area, State, or local offices and employees in the United States as he determines to be neces-

sary ..." 7 U.S.C. § 1981(a). The Secretary is further "authorized and empowered to make advances, without regard to any loan or total indebtedness limitation, to preserve and protect the security for or the lien or priority of the lien securing any loan or other indebtedness ..." 7 U.S.C. § 1985.

Pursuant to the authority given him by 7 U.S.C. § 1989 the Secretary has promulgated rules and regulations which as published in 7 C.F.R. authorize each "State Director within the area of that State Director's jurisdiction ... to do and perform all acts necessary in connection with making and insuring loans, making grants and advances, servicing loans and other indebtedness, and obtaining, servicing, and enforcing security and other instruments related thereto ..." 7 C.F.R. § 1900.2.

*Jolly v. Jones, supra,* requires "an actual, present bona fide offer to pay" to constitute a tender. The State Director said, "This is a letter of commitment that the prior lien will be paid by the government. A check in the amount of $285,682.55 has been requested from the Finance Office ..." The October 1st payoff is given, Mr. Fleming is advised the County Supervisor will meet him on October 1st, instructions for preparation of an assignment are given and a copy of the public voucher for the issuance of a check to the defendants is enclosed.

The State Director thus said the United States agrees to purchase your prior lien on October 1, 1981, for $285,682.55 which will be delivered to you by the County Supervisor in the form of a check payable to your clients on October 1, 1981. Please prepare assignment forms and have them executed by your client.

Viewed realistically the said letter plainly constitutes "an actual, present bona fide offer to pay ..." the defendants the total principal and interest due on their prior lien as of October 1, 1981, and therefore under Georgia law was a tender on the date received—September 27th—of the entire amount as of October 1st.

The United States thereby having agreed on September 27th to purchase defendants' prior lien, the defendants were assured of payment prior to the expiration of the ten (10) days after receipt of notice of default time period. Attorneys fees cannot therefore be collected in addition to principal and interest.

### 3. *Notice to the Farmers Home Administration*

#### a. *Required by November 26, 1980, form*

■ The form that the defendants signed on November 26, 1980, was prepared by the Farmers Home Administration and obligated the defendants "to give the Government written notice of the commencement of any proceedings to foreclose the deed(s) to secure debt held by the undersigned . . . by delivering in person or by mailing such notice to the State Director, Farmers Home Administration . . . at least ten days prior to the commencement of such action . . . ."

Long before the form in question was prepared in 1974 for the Farmers Home Administration, virtually all foreclosures of real property in Georgia were conducted in a non-judicial manner pursuant to the terms of the deed to secure debt and applicable law found in 1933 Ga.Code § 37–607, *et seq.*, and 67–1503 through 1510. Under that procedure the debtor is notified of default; an advertisement containing notice of a foreclosure sale to be held on the first Tuesday of the next month between the legal hours of sale at the county courthouse is run once a week for four weeks preceding sale; the property is sold; and a foreclosure deed is given to the purchaser. The recording of that deed is the first notice upon the deed records that foreclosure occurred.

What were the defendants obligated to do according to the form they signed? They were not commencing an action or any type of lawsuit. They were giving notice of default and were preparing to advertise in October so as to be able to sell the property in question in November. Applied to their situation they and their lawyer could only conclude that the language

of the instrument *was patently ambiguous.* They did what common sense dictated—gave the Farmers Home Administration notice of the debtor's default. The form required nothing more.

#### b. *Required by Code § 20–506*

■ Georgia Code Ann. § 20–506(c) provides:

"(c) The holder of the note or other evidence of indebtedness, or his attorney at law, shall, after maturity of the obligation, notify in writing the maker, indorser or *party sought to be held on said obligation* that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, indorser or party sought to be held on said obligation has 10 days from the receipt of such notice to pay the principal and interest without the attorney's fees. If the maker, indorser, or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement. The refusal of a debtor to accept delivery of the notice hereinbefore specified shall be the equivalent of such notice." (emphasis added).

The United States contends that the defendants at all times intended to sell their deed to secure debt to its Farmers Home Administration; that the Farmers Home Administration was the "party sought to be held on said obligation;" and that regardless of the court's rulings on the subjects already discussed, the Farmers Home Administration was entitled to notice in the same form given the debtor—that "the party sought to be held on said obligation has 10 days from the receipt of such notice to pay the principal and interest without the attorney's fees." In support of its position the United States relies on *United States v. Hattaway,* 488 F.2d 55 (5th Cir. 1974), in which the court stated:

"[T]he record in the case sub judice convinces us that the Hattaways had no hope of collecting the debt from Rocker at the time he was given the § 20–506 notice. The SBA clearly was the party from whom the Hattaways expected to collect. Apparently not content with their good fortune in finding a party willing to pay a previously uncollectable obligation, they attempted to invoke the statutory provision to entitle them to a bonus of attorney's fees from the SBA.

"We entertain no doubt that as soon as it became clear to the Hattaways that the SBA was the real party in interest, they were under an equitable duty to give the § 20–506 notice not only to the nominal debtor, but to the SBA as well. To hold otherwise would be to condone fraud by silence.

"A failure to speak is fraud by silence, where one uses silence for the purpose of gaining an unconscionable advantage over another by concealing for his own benefit information which in equity and good conscience should be communicated.

"*Reeves v. B. T. Williams & Co.*, 1925, 160 Ga. 15, 127 S.E. 293. If there was any doubt about the SBA's entitlement to notice after it had repeatedly advised the Hattaways of its interest in extinguishing Rocker's debt, that doubt was certainly dispelled when the Hattaways received the letter specifically asking that it be kept posted of any action taken either on the mortgage or on the underlying obligation. Because they were silent when there was an equitable duty to speak, the Hattaways are estopped from taking advantage of the attorney's fees statute." 488 F.2d at 57.

Defendants assert that unlike the facts of *Hattaway* they did not intend to collect from the United States or its Farmers Home Administration but were merely proceeding to foreclose as they had a right to do. They further say that neither the United States nor its Farmers Home Administration were the "party sought to be held on said obligation" and that they had neither an equitable nor a statutory obligation to give Code § 20–506(c) form of notice.

The key to the question of whether or not these defendants expected to collect from the United States and its Farmers Home Administration is found in Mr. Fleming's first letter—September 17, 1981—to the State Director of the Farmers Home Administration and its already quoted, emphasized language"

"... Unless payment is made within ten (10) days from the date of this letter, we will have no alternative but to institute foreclosure proceedings."

If the defendants had intended to give notice of debtor's default and their intention to institute foreclosure proceedings—all that was required by their signed agreement—there would have been no reason to also advise the Farmers Home Administration "unless payment is made within ten (10) days from the date of this letter, we will have no alternative but to institute foreclosure proceedings." That added, unnecessary language clearly indicated defendants' expectation that payment would be made by the United States or its Farmers Home Administration. In addition, as in *Hattaway* these defendants were under an equitable obligation to give the United States and its Farmers Home Administration a Code § 20–506(c) form of notice. *Hattaway* is thus sufficient by itself to support this court's conclusion that defendants, because of failure to give a Code § 20–506(c) form of notice, are not entitled to attorneys fees in addition to principal and interest.

Further support for the court's conclusion is found in a 1979 decision of the Supreme Court of Georgia—*Brown v. Bank of Early*, 243 Ga. 319, 253 S.E.2d 755—in which the Supreme Court equated the status of a guarantor to that of an endorser in Code § 20–506(c) and held that absent Code § 20–506 form of notice a guarantor cannot be held liable for attorneys fees in addition to principal and interest. In concurrence Justice Hill stated, "The holder who seeks attorneys fees from another must give notice in writing to the proposed payor, whether maker, endorser, surety, or guar-

antor. Code Ann. § 20–506(c)." The proposed payor was the United States and its Farmers Home Administration; as proposed payor it was entitled to said notice.

From a statutory standpoint a realistic view of the facts of this case leads this court to alternatively conclude that the United States and its Farmers Home Administration, from the time that the defendants signed the agreement to give notice and thereby learned of the $1,430,530.00 second security deed loan to their first security deed debtor, should be viewed as the party the defendants sought to hold. The defendants knew that the United States, to protect its second security deed loan, would have to purchase their first deed to secure debt loan. Under the statutory concept of Code § 20–506(c) the United States was the target of the defendants; as such, notice was required.

For each of the alternative, aforesaid reasons the plaintiff United States of America and its Farmers Home Administration are not obligated to pay defendants, or their attorney, attorneys fees in addition to principal and interest.

Let judgment be entered for the United States of America and its Farmers Home Administration.