In the Matter of Joseph C. WILDER, Debtor.

Bankruptcy No. 82–50002.

United States Bankruptcy Court, M. D. Georgia, Macon Division.

July 30, 1982.

Virgil H. Shepard, Macon, Ga., for debtor.

W. W. Hemingway, Adams, Hemingway & Hemingway, Macon, Ga., for Fulton Federal Sav. and Loan Assn.

Camille Hope, Macon, Ga., Trustee, pro se.

## MEMORANDUM OPINION ON DEBTOR'S OBJECTION TO CLAIM

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

### STATEMENT OF THE CASE

Debtor Joseph C. Wilder filed his petition with this Court under Chapter 13 of Title 11 of the United States Code on January 14, 1982. On February 18, 1982, he filed his objection to the claim of Fulton Federal Savings and Loan Association (formerly American Federal Savings and Loan Association of Macon) (hereinafter Fulton Federal).

After reviewing the evidence and considering the arguments and briefs of counsel, the Court is of the opinion that the claim filed by Fulton Federal must be disallowed except to the extent that it represents contractual payments missed by Debtor prior to the filing of his bankruptcy petition. The Court is also of the opinion that Fulton Federal is not entitled to an award of attorney's fees under section 20–506 of the Georgia Code. In support of its opinion, the Court attaches the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The parties have stipulated to the relevant facts. On or about February 23, 1977, Debtor entered into a loan agreement with Fulton Federal. Under the agreement, Fulton Federal lent Debtor $24,000, and in exchange, Debtor executed a note and security deed in favor of Fulton Federal. This security deed gave to Fulton Federal a first lien upon Debtor's principal residence.[1] Debtor was to repay the loan in 360 monthly installments.

The loan went into default and Fulton Federal exercised its contractual right to accelerate the maturity of the loan. Debtor was informed of this acceleration by a letter from Fulton Federal's attorneys on November 23, 1981, which declared the entire debt due and payable and which gave Debtor ten days in which to pay the entire amount of the principal and interest due. The letter also stated that if the debt were not paid within ten days, Debtor would be assessed an additional fifteen percent of the amount of the principal and interest. The additional amount represents attorney's fees as provided in the Georgia Code. Ga. Code Ann. § 20–506 (1977). Debtor received the letter on December 3, 1981.

On December 10, 17, 24 and 31, Fulton Federal's attorneys caused a legal advertisement to run in the proper newspaper, stating the intent of Fulton Federal to fore-

1. The parties stipulated by letter that the Court may consider the documents attached to Fulton Federal's proof of claim. Those documents include the note and security deed executed to Fulton Federal. The parties further stipulated that the real estate covered by the security deed is Debtor's principal residence.

close on Debtor's residence on January 5, 1982. On January 4, 1982, Debtor filed his bankruptcy petition with this Court. The sale of the residence never took place, having been stayed by the filing of the bankruptcy petition.

Debtor's Chapter 13 plan is to extend approximately four years and one month and proposes to repay the arrearage due to Fulton Federal.[2] On February 17, 1982, Fulton Federal's proof of claim was filed with this Court, in which Fulton Federal asserted a claim for $23,094.52, representing the entire accelerated amount of the note, plus fifteen percent as statutory attorney's fees under section 20–506 of the Georgia Code. Debtor filed his objection to the allowance of the claim on February 18, 1982.

## CONCLUSIONS OF LAW

The two issues before the Court are:

1. Whether Debtor, who filed his bankruptcy petition after acceleration of the note by Fulton Federal but before a final foreclosure sale on his principal residence, may cure his default under section 1322(b)(5) of the Bankruptcy Code; and

2. If Debtor can cure the default, whether he is liable for attorney's fees as provided by section 20–506 of the Georgia Code.

*Curing the default* Section 1322(b)(5) of the Bankruptcy Code, 11 U.S.C.A. § 1322(b)(5) (West 1979), allows a debtor's Chapter 13 plan to "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." *Id.* Section 1322(b)(5) applies notwithstanding the provision of subsection (b)(2) that a plan may not modify the rights of holders of claims secured by a security interest in real property that is a debtor's principal residence.

Section 1322(b)(5) is applicable to Debtor's situation. The claim is a secured one and the final payment under the loan is not due until the year 2007, well beyond the date of the final payment under the four-year repayment period of Debtor's Chapter 13 plan. Debtor seeks to cure the default through the plan by paying the $1,209.65 arrearage to Fulton Federal. Fulton Federal, however, contends that there is no default that Debtor may cure because the acceleration has made the entire amount of the note due and payable.

Fulton Federal's contention is one that has been raised by other secured creditors. The contention has been unsuccessful in many cases because it is not consistent with the rehabilitative spirit of Chapter 13. If a creditor were able to avoid the provisions of section 1322(b)(5) by accelerating the maturity of a loan when it heard that a debtor was in financial difficulty, acceleration would become commonplace. Creditors would accelerate the maturity of loans after one missed payment in order to avoid the treatment of section 1322(b)(5) of the Bankruptcy Code. Such accelerations would thereby prevent debtors from curing loans upon which they have defaulted, and would deprive debtors of their opportunity to save their principal residence.

The District Court for the Eastern District of New York had Chapter 13's rehabilitative purpose in mind when it affirmed the bankruptcy court's finding that a debtor could cure a default despite prepetition acceleration. *DiPierro v. Taddeo (In re Taddeo),* 15 B.R. 273, 5 Collier Bankr.Cas.2d 1309, 8 Bankr.Ct.Dec. 679 (D.C.E.D.N.Y. 1981). Under New York law, a mortgage was not extinguished and title did not pass until there had been a foreclosure sale. In *Taddeo,* there had been no sale, and the court held that the mortgage was therefore still in existence and a default under it could be cured. The court stated that "the purposes of Chapter 13 would be violated if the defendant-debtors were to lose their residence because they failed to make three mortgage payments. . . ." *Id.* at 276, 5 Col-

---

2. At the time of the section 341 meeting of  creditors, that arrearage was $1,209.65.

lier Bankr.Cas.2d at 1312, 8 Bankr.Ct.Dec. at 681.

█ In Georgia, execution of a security deed places legal title to the property in the hands of the grantee in the security deed, here Fulton Federal.[3] However, while the security deed placed legal title in Fulton Federal, it left equitable title in Debtor. *Pendley v. Brooks*, 119 Ga.App. 268, 166 S.E.2d 898 (1969); G. Pindar, Georgia Real Estate Law and Procedure § 21–49 (2d ed. 1979). It is this equitable title that Debtor seeks to retain by curing his default and continuing his monthly payments.

█ Georgia law does not permit Debtor, by a tender of the missed payments, to reinstate the monthly payment terms of his security deed once maturity has been accelerated. *Philyaw v. Fulton National Bank*, 139 Ga.App. 28, 227 S.E.2d 811 (1976). Under state law, the only way Debtor may retain his equitable interest in the property is to tender the entire amount of the debt secured by the security deed. He must thus, under state law, pay the debt in full or lose his property.

When Debtor failed to pay the accelerated debt in full, Fulton Federal began foreclosure proceedings on his principal residence. However, at any time prior to the actual foreclosure sale, Debtor could have tendered the entire amount due and had clear title to his residence. *Crawford v. First National Bank*, 137 Ga.App. 294, 223 S.E.2d 488 (1976). In this case, Debtor did not pay the entire amount of the accelerated debt, but elected to file under Chapter 13 of the Bankruptcy Code. The Court must now determine the legal effect of the filing.

█ Under Georgia law, Debtor still had his right of redemption at the time he filed his bankruptcy petition because the residence had not been foreclosed upon. Section 1322(b)(5), in the spirit of Chapter 13, provides Debtor with an *alternative means* by which to redeem his property. Instead of paying the entire amount due under the security deed, a debtor may in effect "decelerate" the maturity of the security deed by paying, through the Chapter 13 plan, his missed payments and providing for payment of all future monthly payments as the contractual amounts become due. This prevents Debtor from being deprived of his equitable interest in his residence and furthers the rehabilitative purpose of Chapter 13.[4]

This Court is of the opinion that in accordance with the rehabilitative provisions of Chapter 13, Debtor must be allowed to cure the default. To allow Debtor to cure his default will not significantly harm Fulton Federal. Fulton Federal will be paid its arrearage through the plan, and it has made no allegation that the arrearage is not being paid within a reasonable period. If Debtor fails to make his Chapter 13 payments or his future contractual monthly payments to Fulton Federal, then Fulton Federal will still be able to look to Debtor's residence as security for its debt.

It is often the case that debtors do not seek legal advice until after a notice of acceleration has been sent to them or their residence is being advertised for sale. To hold that they may not cure their defaults would foreclose their last avenue of relief,

---

**3.** Whenever any person in this State conveys any real property by deed to secure any debt to any person loaning or advancing said grantor any money or to secure any other debt and shall take a bond for title back to said grantor upon the payment of such debt or debts ... such conveyance of real ... property shall pass the title of said property to the grantee until the debt or debts which said conveyance was made to secure shall be fully paid, and shall be held by the courts to be an absolute conveyance, with the right reserved by the grantor to have said property reconveyed to him upon the payment of the debt or debts intended to be secured agree-ably to the terms of the contract, and not a mortgage. No bond for title or to reconvey shall be necessary where such deed shows upon its face that it is given to secure a debt. Ga.Code Ann. § 67–1301 (1967).

**4.** In three recent cases, the bankruptcy court for the Northern District of Georgia held that a debtor may cure an arrearage despite a prepetition acceleration. *In re Smith*, 19 B.R. 592 (Bkrtcy.N.D.Ga.1982); *In re Clark*, No. 81-00347N (Bankr.N.D.Ga.1982); and *Gooden v. Buffalo Savings Bank (In re Gooden)*, 21 B.R. 456 (Bkrtcy.N.D.Ga.1982).

and secured creditors who send notices of default and acceleration would be able to except themselves permanently from the provisions of Chapter 13. This result would be contrary to the liberal provisions of Chapter 13, designed by Congress to afford debtors a fresh start in life.

## II

■ *Attorney's fees* The Georgia Code provides in part that:

Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable, and collectible as a part of such debt, if such note or other evidence of indebtedness be collected by or through an attorney after maturity, subject to the following provisions:

(a) If such note or other evidence of indebtedness provides for attorney's fees in some specific per cent. of the principal and interest owning [sic] thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 per cent. of the principal and interest owing on said note or other evidence of indebtedness.

. . . .

(c) The holder of the note or other evidence of indebtedness, or his attorney at law, shall, after maturity of the obligation, notify in writing the maker, indorser or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, indorser or party sought to be held on said obligation has 10 days from the receipt of such notice to pay the principal and interest without the attorney's fees. If the maker, indorser or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement. The refusal of a debtor to accept delivery of the notice hereinbefore specified shall be the equivalent of such notice.

Ga.Code Ann. § 20–506(a), (c) (1977).

In this case, the maturity of the loan was accelerated by a letter from Fulton Federal's attorneys, and the attorneys for Fulton Federal placed the foreclosure advertisements in the newspapers. Fulton Federal's attorneys also searched the title on Debtor's residence.

The issue before the Court is whether the action taken by Fulton Federal's attorneys is sufficient to justify an award of attorney's fees under section 20–506 of the Georgia Code. Georgia case law interpreting section 20–506 indicates that in order to collect the statutory fifteen percent attorney's fees, a creditor must have actually recovered both principal and interest in subsequent litigation. The Georgia Court of Appeals recently addressed the issue of an award of attorney's fees under section 20–506:

It is clear that in the absence of the peculiar circumstances which later developed in this case, the appellants' failure to pay the principal and interest due on subject notes within ten days of the date of the receipt of the July 15th letters would have allowed the bank to have recovered attorney's fees *if, in subsequent litigation, it had recovered the principal and interest. Woods v. State of Georgia,* 109 Ga.App. 225, 136 S.E.2d 18 (1964).

*Merritt v. First State Bank,* 161 Ga.App. 734, 289 S.E.2d 547 (1982) (emphasis added).

Further, the United States District Court for the Middle District of Georgia has interpreted section 20–506 of the Georgia Code. *United States v. Allen,* No. 81–84–Val. (M.D.Ga.1982). The district court based its opinion on *Strickland v. Williams,* 215 Ga. 175, 109 S.E.2d 761 (1959), a Georgia case interpreting section 20–506. The court found that "*Strickland v. Williams* suggests that the actual collection of the debt as the result of representing the holder of the debt in court, is the collection by or through an attorney that fulfills the condition precedent to the enforcement of § 20–506."

*United States v. Allen*, No. 81–84–Val., slip op. at 12. This interpretation is consistent with *Merritt v. First State Bank*. In the case at bar, the debt was never collected as a result of a court contest, so Fulton Federal is not entitled to an award of attorney's fees under section 20–506 of the Georgia Code.

In *United States v. Allen*, the district court went on to note that:

> Even more implicit in the *Strickland v. Williams* decision is the concept that to justify the statutory imposition of attorneys fees upon the debtor, the collection by or through an attorney must result from the practice of law—some activity of a lawyer that only a lawyer is legally authorized to perform. If this were not the concept, a lawyer could perform services that a non-lawyer is authorized to perform and collect attorneys fees from the debtor, when for performance of the same service the non-lawyer cannot charge or collect any fees from the debtor.

*United States v. Allen*, slip op. at 12.

The district court's holding that a party is not entitled to an award of attorney's fees under section 20–506 of the Georgia Code unless the attorney has done some activity prohibited to nonlawyers would also bar an award of attorney's fees to Fulton Federal. Fulton Federal's attorneys searched the title to Debtor's residence, wrote the acceleration letter, and placed the foreclosure sale advertisements in the newspaper. The nonlawyer is not prohibited from performing any of those tasks; the tasks are not exclusive to attorneys.

Thus, an award of statutory attorney's fees is not justified because Fulton Federal's attorneys did not succeed in recovering the full amount of principal and interest in a court proceeding and because the activities performed by Fulton Federal's attorneys were not forbidden to nonlawyers.