**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James L. ALLEN and H.W. Allen,**
**Defendants-Appellants.**

**No. 82–8160.**

United States Court of Appeals,
Eleventh Circuit.

March 11, 1983.

Carlton A. Fleming, Jr., John S. Sims, Jr., Tifton, Ga., W. Emory Walters, Ocilla, Ga., for defendants-appellants.

Gregory Leonard, Asst. U.S. Atty., Macon, Ga., for plaintiff-appellee.

Before HILL and VANCE, Circuit Judges, and TUTTLE, Senior Circuit Judge.

VANCE, Circuit Judge:

This is an appeal from the district court's judgment enjoining the non-judicial foreclosure of a deed to secure debt from James W. Bush (Bush) to James L. and H.W. Allen (the Allens). The injunction was issued on the complaint of the United States through the Farmers Home Administration of the Department of Agriculture (FmHA). FmHA sought the injunction to protect its interests as a junior lienholder and avoid the paying of attorneys' fees. The controlling facts were stipulated by the parties. Other issues having been settled the only

dispute remaining concerns the imposition of attorneys' fees.

In connection with his purchase of real estate Bush gave the Allens two promissory notes in the total principal amount of $330,-000. To secure the debt Bush executed a deed to secure debt covering three tracts of land. Two years later, in 1980, Bush applied to FmHA for emergency farm loans. Before making the emergency farm loans FmHA requested and the Allens signed an "Agreement by Holder of Prior Deed to Secure Debt" as prepared by FmHA. By the agreement the Allens were required to give written notice to FmHA at least ten days prior to their commencement of any foreclosure proceedings. Following the Allens' execution of this agreement FmHA made emergency farm loans to Bush of $1,876,530.00 taking deeds to secure debt from Bush on seven tracts of land, three of which were subject to the prior deeds to secure debt in favor of the Allens.

On July 31, 1981 James L. Allen wrote Bush reminding him of a payment due on September 13, 1981 and stating that because of the Allens' own obligations they would be unable to extend the time for payment. A copy of the letter was sent to the county FmHA supervisor. Notwithstanding the notice, Bush defaulted on the payment. On September 17, 1981 the Allens' attorney wrote to Bush notifying him of the default and acceleration of the indebtedness and giving him the statutory opportunity to pay within ten days to avoid incurring attorneys' fees pursuant to Georgia Code Ann. § 13–1–11 (formerly § 20–506). A copy of that letter was sent to the FmHA county supervisor. A second letter was sent on the same date by the Allens'

attorney to the FmHA state director with a copy to the county supervisor. The second letter stated in effect that if payment were not made in ten days foreclosure would be instituted. It made no reference to attorneys' fees. Both letters were received by the addressees on September 18, 1981.

On September 25, 1981 the FmHA state director wrote to the Allens' attorney stating that the agency had decided to protect its junior lien by paying off the lien in favor of the Allens and taking an assignment from them. The letter committed FmHA to pay off the Allen lien and requested that their attorney take no further action. Attached to the letter was a copy of a voucher ordering a check from FmHA's national finance office in the full amount of the principal and interest due the Allens. The letter also stated that it was a "letter of commitment" designed to eliminate assessment of attorneys' fees.

On September 28, 1981 the Allens' attorney wrote the state director advising that the Allens would not accept the principal and interest unless the attorneys' fees were also included under Georgia Code Ann. § 13–1–11. On October 1, 1981 the FmHA county supervisor offered the attorney a check in the full amount of the principal and interest but without any attorneys' fees. The Allens' attorney refused the check and began non-judicial foreclosure proceedings on October 7, 1981.

The defaulted note from Bush to the Allens contained a provision obligating Bush to pay an additional 15% in attorneys' fees in the event of default if the note were collected by an attorney. This provision is controlled by Georgia Code Ann. § 13–1–11 [1] which is at the heart of the present controversy. The section makes a provision

---

1. Ga.Code Ann. § 13–1–11 (1981) provides:
13–1–11. Validity and enforcement of obligations to pay attorney's fees upon notes, etc.
(a) Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectible as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity, subject to the following provisions:

(1) If such note or other evidence of indebtedness provides for attorney's fees in some specific percent of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 percent of the principal and interest owing on said note or other evidence of indebtedness;
(2) If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be

for attorneys' fees up to 15% "valid, enforceable and collectible as part of such debt" if the note be collected by or through an attorney after maturity provided a required ten day notice is given to "the maker, endorser or party sought to be held on said obligation." The ten day notice must state in effect that the attorneys' fees provision shall be enforced if the principal and interest are not paid within ten days. If payment of principal and interest is made in full within ten days after notice attorneys' fees are not collectible.

The district court found that (1) the steps taken by the Allens' attorney prior to the commencement of foreclosure did not constitute collection "by or through an attorney" within the meaning of Georgia Code Ann. § 13–1–11 so that no attorneys' fees were collectible; (2) the FmHA state director's letter of September 25, 1981 constituted a tender of all sums due within the statutory ten day period during which payment of attorneys' fees could be avoided; and (3) the Allens did not give the FmHA state director the ten day notice with respect to attorneys' fees. On the basis of these findings, the district court concluded that attorneys' fees were not collectible and entered judgment in favor of the United States.

We disagree with the district court, 536 F.Supp. 222, on all three points and therefore reverse.

### (1)

Collection by and through an attorney.

The district court found the Allens ineligible for attorneys' fees because collection of the debt was not "by and through an attorney" as required by Ga.Code Ann. § 13–1–11(a). According to the district court, in order to be eligible for attorneys' fees under section 13–1–11 the lawyer must perform services that only a lawyer is legally authorized to perform.

Despite some confusion in the case law, it is at least clear that the debt need not be sued upon in order for attorneys' fees to be collectible. This former statutory requirement was eliminated by a 1953 amendment allowing imposition of fees under a broader range of conditions. *See General Electric Credit Corp. v. Brooks,* 242 Ga. 109, 113–114, 249 S.E.2d 596, 599–600 (1978).[2] Attorneys' fees are now valid and enforceable "if collected by or through an attorney," provided the creditor gives the debtor a full ten days after the debtor receives notice of the default to avoid the assessment by paying full principal and interest. *Id.*

Whenever the creditor has used the services of an attorney to collect a defaulted obligation the "by or through an attorney" requirement of section 13–1–11(a) is satisfied. *In re East Side Investors,* 694 F.2d 242 (11th Cir.1982). "The statute simply requires that the creditor place the matter in the hands of an attorney and that the attorney subsequently take action to enforce the debt." *In re Village Apartment Associates,* 9 B.R. 211, 216 (Bkrtcy.N.D.Ga. 1981). The Allens' attorney satisfied the collection requirement by sending the required notice after default and taking fur-

---

construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00;

(3) The holder of the note or other evidence of indebtedness or his attorney at law shall, after maturity of the obligation, notify in writing the maker, endorser, or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, endorser, or party sought to be held on said obligation has ten days from the receipt of such notice to pay the principal and interest without the attorney's fees. If the maker, endorser, or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement. The refusal of a debtor to accept delivery of the notice specified in this paragraph shall be the equivalent of such notice.

2. This case summarizes the competing policy concerns and changes in the statutory provisions regarding the assessment of attorneys' fees under Georgia law.

ther action to collect the debt and attorneys' fees when the amount owed was not tendered within the required ten day period.

The Georgia legislature has taken a much broader view of the permissible role of an attorney than that urged upon us by the appellees. Ga.Code § 15–19–50 defines the practice of law to include among other things "(3) The preparation of legal instruments of all kinds whereby a legal right is secured... (5) The giving of any legal advice; and (6) Any action taken for others in any matter connected with the law." In drafting the letter to Bush and the FmHA the Allens' attorney was practicing law as described in any and all of these sub-sections.

The district court relied on *Strickland v. Williams,* 215 Ga. 175, 109 S.E.2d 761 (1959), as authority for the proposition that, to justify the attorneys' fees assessment, the attorney must perform some activity that only a lawyer is legally authorized to perform. *Strickland* is sharply distinguishable on the facts and cannot be read as a judicially created reversion to the more restrictive pre-1953 law. In *Strickland,* the original obligor on the note containing the attorneys' fees provision was put in receivership and the attorneys' fees notice was given *after* the bankruptcy court had jurisdiction over the debt. The bankruptcy court had issued an order enjoining all persons "from instituting, filing, or prosecuting any suits, bills, attachments, garnishments, *or other proceedings of whatever kind against the petitioner* or any property or assets of his or of the said Bank other than by answer, cross-bill or intervention." *Id.,* 109 S.E.2d at 763 (emphasis added by Georgia Supreme Court). The *Strickland* court did find that the debt was collected by the bankruptcy receiver, not by or through the creditor's attorney, but the crucial fact preventing the attorneys' fee assessment was that the notice of intent to assess attorneys' fees had been given in violation of the bankruptcy court's injunction and was therefore defective.

This distinction is clarified by comparison with *Woods v. State,* 109 Ga.App. 225, 136 S.E.2d 18 (1964). In *Woods* property owned by Kellam, subject to a security deed executed by Kellam and held by Woods, was transferred to Hobbs subject to the security deed. Subsequently, Hobbs' assets were placed in receivership. After the initiation of bankruptcy proceedings against Hobbs, Woods gave Kellam notice of intent to assess attorneys' fees. The court found that the notice was timely and adequate: Woods' claim was directly against Kellam who was not a party to the bankruptcy proceedings, and since Woods did not become Kellam's creditor, the assessment of attorneys' fees did not result in an illegal preference in favor of Woods. Neither Kellam nor Hobbs paid within ten days of notice. Thus, the fees attached to the debt and were due to the creditor, and the court allowed the assessment although the actual collection was affected by the receiver in bankruptcy, not by Woods' attorney.[3]

At oral argument, appellees cited *Merritt v. First State Bank,* 162 Ga.App. 15, 289 S.E.2d 547 (1982)[4] as additional authority for the proposition that attorneys' fees are assessible only when legal proceedings are initiated. But *Merritt,* like *Strickland,* is a case of defective notice. The creditor first gave the debtors notice of intent to assess

---

3. Although Hobbs apparently owned the property, so far as deed records disclosed title remained in Kellam. *Woods v. State,* 109 Ga. App. 225, 136 S.E.2d 18, 20 (1964). Hobbs filed his bankruptcy petition October 29, 1962 and the creditor did not send notice of default and intent to assess attorney's fees to Kellam until November 29, 1962. The court was not troubled by the fact that neither Hobbs nor the bankruptcy court received any notice of default. Although Hobbs' interest in the debt was similar to the interest of the FmHA in

Bush's debt, the *Woods* court did not mention a possible defect in notice but required the bankruptcy receiver to pay the attorney's fees.

4. At oral argument, the appellees also cited *In re Joseph Wilder,* 22 B.R. 294 (Bkrtcy.M.D.Ga. 1982). The *Wilder* court, however, relied on the district court opinion in this case for its interpretation of *Merritt.* We disagree with the district court's analysis, and thus, we disapprove of the reasoning in *Wilder.*

attorneys' fees if principal and interest were not paid within ten days; but then served the debtors with a complaint granting an additional ten day extension. The debtors tendered payment more than ten days after the initial notice, but within the time period granted by the complaint. The court held that the creditor was bound by the debtor's acceptance of its later offer. Appellees emphasize dicta in *Merritt* stating that the creditor would have been able to recover attorneys' fees "if in subsequent litigation, it had recovered the principal and interest." 289 S.E.2d at 549. Appellees contend that, under this language, court proceedings are a prerequisite to collection of attorneys' fees. We disagree. By the cited language the court was merely distinguishing the peculiar facts of *Merritt* from the more usual situation in which no time extension is granted.

Finding no support in the Georgia case law for the argument that the "by and through an attorney" provision is to be given a restricted or specialized interpretation, we hold that the actions undertaken by the Allens' attorney toward collection of the debt fulfill this requirement for assessment of attorneys' fees under Ga.Code Ann. § 13–1–11(a).

### (2)

### Adequacy of Tender

As an alternative ground for relief the district court found that the Allens were not entitled to attorneys' fees because, by enclosing a copy of the voucher sent to the national office, FmHA made sufficient tender within the ten day period provided in Ga.Code Ann. § 13–1–11. We disagree.

The voucher is essentially a request for a check, and thus, at most, a statement of intention to make a tender. The tender requirement "is not met by merely evidencing a willingness to pay, or by an offer or intention to make a tender." *Jolly v. Jones,* 201 Ga. 532, 40 S.E.2d 558 (1946). Although tender does not have to be in cash unless so demanded by the creditor, *Brock v. Baker,* 128 Ga.App. 397, 196 S.E.2d 875 (1973); *Jolly v. Jones,* 201 Ga. at 532, 40 S.E.2d at 558

(1946), it must demonstrate an ability to carry out the terms of the contract. *Haislip v. Garber,* 155 Ga.App. 94, 95, 270 S.E.2d 237 (1980).

Appellees strenuously urge that the voucher demonstrated their good faith willingness to pay as soon as necessary FmHA procedures could be complied with. But, just as a check written on insufficient funds does not constitute valid legal tender despite the drawer's willingness to deposit funds to cover the check, *Manry v. Phoenix Mutual Life Insurance Co.,* 42 Ga.App. 24, 155 S.E. 43 (1930), the good faith of the drafter does not convert a voucher to valid legal tender. The state office does not claim authority to encumber funds without approval from the national office; nor does the government argue that payment of vouchers is automatic and not subject to the discretion of the national director. The letter accompanying the voucher stated specifically that payment would not be made until a date outside the ten day period. The letter to the Allens from the FmHA with a copy of the voucher enclosed was merely an indication of a willingness to pay. This is not legal tender.

### (3)

### Adequacy of Notice

FmHA insists that the Allens failed to comply with the notice requirement of § 13–1–11, because no notice was given to the FmHA state director. The district court found that the Allens owed an additional duty of notice to FmHA as the "real debtor" and a "party sought to be held" on the obligation. *Security Mortgage Co. v. Powers,* 278 U.S. 149, 158, 49 S.Ct. 84, 87, 73 L.Ed. 236 (1929); *Broun v. Bank of Early,* 243 Ga. 319, 253 S.E.2d 755 (1979); Ga.Code Ann. § 13–1–11(a)(3).

As evidence supporting the district court's holding, FmHA argues that the notice it did receive from the Allens shows that they looked to FmHA for payment of the debt. The notice cited the amount due and warned that unless payment was forthcoming within ten days the Allens would foreclose.

*United States v. Hattaway,* 488 F.2d 55 (5th Cir.1974), relied upon by FmHA and by the district court is inapposite. In *Hattaway* the SBA had foreclosed on its second mortgage to Rocker and was in possession of the property. Although the SBA informed the Hattaways that it intended to pay off Rocker's indebtedness and requested notice of any action taken by the Hattaways concerning their deed to secure debt, the Hattaways gave the SBA no notice at all. *Id.* at 56–57. The court, finding that the Hattaways "had no hope of collecting the debt from Rocker" and that "[t]he SBA clearly was the party from whom the Hattaways expected to collect," held that under these facts the Hattaways were under ·an equitable duty to give SBA the statutory notice as soon as it became clear to them that the SBA was the real party in interest. To hold otherwise would be to condone "fraud by silence," gaining an unconscionable advantage over an innocent third party by concealing information which in equity and good conscience should be communicated. *Id.* at 57.

The facts here do not merit the same treatment. Bush was not known to be insolvent. The Allens had ample security for their debt in the property itself. FmHA contracted for and received notice. In fact FmHA knew over one month *prior to any default* that the Allens would foreclose if Bush did default. FmHA also received a timely copy of Bush's statutorily sufficient notice in addition to the notice for which it contracted. Certainly there was no "fraud by silence" here. FmHA was well aware of the Allens' intent to foreclose in the event of default and of their intent to assess fees. FmHA also argues that the mere presence of the separate notice agreement between FmHA and the Allens signified the Allens' "expectation and acquiescence to having FmHA as the payor should Mr. Bush default ..." Although the government uses

the word "surety" to describe the relationship between the FmHA and Mr. Bush concerning his note to the Allens, the government admits that FmHA was not legally bound to pay Mr. Bush's note. FmHA was not a surety, guarantor, or accommodation party to that note but merely a junior lienholder, whose interest in the land was subject to that of the Allens. This relationship does not make FmHA a "person sought to be held on said obligation," therefore FmHA is due no statutory notice of intent to seek attorneys' fees. *Pendergrast v. Ewing,* 158 Ga.App. 5, 279 S.E.2d 233 (1981); *Woods v. State,* 109 Ga.App. 225, 136 S.E.2d 18 (1964). The notice agreement executed by the Allens and the FmHA does not give the Allens a right of action against FmHA for the debt owed them by Bush. It does not change FmHA's status from that of a junior lienholder. It was sought by FmHA to gain a notice of foreclosure to which it was not otherwise entitled to better enable it to protect its junior interest should the senior debt be foreclosed.

Since the FmHA was not a "party sought to be held for said obligation" for the purposes of Ga.Code Ann. § 13–1–11 it was due only the notice for which it had contracted. FmHA can only assert a claim of deficiency of notice if the notice received by Bush was deficient.[5] The parties have not contested the sufficiency of that notice.

■ The FmHA does not believe that the actions taken by the Allens' attorney justifies a fee of over $42,000. We concede that the attorney's modest efforts hardly justify such a large award. This, however, is not the issue on appeal. The validity of the law is not challenged. We are concerned merely with its application. Georgia law allows the assessment of such disproportionate fees if the formal statutory requirements are met. *See Roddy Sturdivant Enterprises, Inc. v. National Advertising Co.,* 145 Ga.App. 706, 244 S.E.2d 648 (1978); *Bank of*

5. Although we do not reach the issue in this case it is likely that the notice sent the FmHA county supervisor including a copy of the notice to Bush would on the facts of this case meet the substantial compliance requirement for sufficiency of notice of intent to collect

attorney's fees of *General Electric Credit Corp. v. Brooks,* 242 Ga. 109, 249 S.E.2d 596 (1978). It is clear from FmHA State Director's letter of September 25, 1981 that it was fully apprised of the Allens' intent to assess attorney's fees.

*Lumpkin v. Farmers' State Bank,* 35 Ga. App. 340, 133 S.E. 307 (1926) (defendant cannot lessen liability by showing plaintiff actually contracted with his attorney for a lesser sum). The fees are for the benefit of the creditor not his attorney. *See Spence v. Phillips,* 172 Ga. 782, 158 S.E. 797 (1931); *Bank of Lumpkin v. Farmers' State Bank,* 35 Ga.App. 340, 133 S.E. 307 (1926). We find that the Allens met the requirements of Ga.Code Ann. § 13–1–11: the debt was collected by or through an attorney, FmHA did not tender payment prior to the expiration of the ten day period, and the Allens did not owe FmHA the statutory notice or any additional equitable notice of their intent to seek attorneys' fees. The district court decision is on all grounds reversed and remanded for further proceedings in conformity with this opinion.

REVERSED and REMANDED.