**In re MASNORTH CORP., a/k/a the Courtyard Shopping Center, Debtor.**

**The MIDLAND MUTUAL LIFE INSURANCE COMPANY, Plaintiff,**

**v.**

**MASNORTH CORP., a/k/a the Courtyard Shopping Center, Defendant.**

**Bankruptcy No. 82–00992A.**
**Adv. No. 82–2675A.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

April 7, 1983.

Ron L. Quigley, Davis, Matthews & Quigley, P.C., Atlanta, Ga., for plaintiff.

Alfred G. Adams, Jr., Sutherland, Asbill & Brennan, Atlanta, Ga., for defendant.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

This case is before the Court on the Complaint for Relief from Stay filed by The Midland Mutual Life Insurance Company ("Midland") and on confirmation of the debtor's Chapter 11 plan of reorganization. After notice, a hearing was held on December 1, 1982, on these issues. The bases for Midland's objection to confirmation and complaint for relief from the automatic stay are substantially identical. Therefore, the Court will address Midland's objection to confirmation and complaint for relief from stay jointly.

The debtor's plan of reorganization seeks to cure and reinstate Midland's mortgage on 6600 Roswell Road ("the property") under the provisions of 11 U.S.C. § 1124.[1]

---

1. Impairment of claims or interests. Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest;

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—

(A) cures any such default, other than a default of a kind specified in section 365(b)(2) of

Midland is the debtor's sole secured creditor. Midland contends that the debtor should not be granted leave to cure its mortgage default since (1) the debtor has failed to provide for deferred maintenance on the property; (2) the debtor has failed to provide for the payment of statutory attorney's fees under Official Code of Georgia § 13–1–11 (formerly Georgia Code § 20–506); and (3) the debtors has failed to offer Midland current market interest rates on both the mortgage arrearages and the reinstated mortgage principal. Midland has also objected to confirmation of the debtor's plan due to the debtor's alleged failure to comply with the provisions of 11 U.S.C. § 1129(a)(10). Section 1129(a)(10) of the Bankruptcy Code requires that at least one class of claims has accepted the plan without including any acceptance of the plan by an insider holding a claim of such class.

At the December 1, 1982 hearing, insufficient time was available to enable Midland to present all of its evidence concerning the amount of deferred maintenance which it believes the debtor must perform in order to cure its default under its mortgage obligations to Midland. The Court specifically reserved a final determination of the extent of the deferred maintenance which the debtor must undertake pending its ruling on certain of the legal issues which are the subject of this Order. For the reasons that follow, the Court finds that, subject to the debtor's complying with certain directions of the Court, the debtor may cure and reinstate Midland's mortgage and that the debtor's plan is a confirmable plan.

On March 2, 1982, at the time the debtor filed its reorganization petition, it was two payments in arrears to Midland. The debtor's monthly obligations to Midland are approximately $5,100.00 per month. The debtor has made no payments to Midland during the course of this proceeding. The debtor's plan proposes to pay Midland all arrearages in cash on the effective date of the plan, as well as to pay all administrative claims and all past due ad valorem taxes on the subject property. If the debtor does not have sufficient cash to fund these claims at confirmation, additional funds will be provided by the debtor's sole shareholder, Maswest, Inc.

The fair market value of the property was shown to be between $575,000 and $600,000, and the principal amount of the Midland obligation after reinstatement will be approximately $451,000.00. Midland is seeking statutory attorney's fees of 15% on the current outstanding balance of principal and interest of approximately $467,000.00.

## CURE AND REINSTATEMENT

Midland has alleged that its mortgage cannot be cured and reinstated under 11 U.S.C. § 1124 because its legal, equitable, and contractual rights will not remain unaltered after the cure proposed by the debtor is consummated; that Midland will not be compensated for the damages arising out of the debtor's default, which includes the payment of market interest rate, and not contractual interest, on both arrearages and the reinstated mortgage principal; and that Midland will not receive payment of attorney's fees.

The cure and reinstatement of a mortgage that is in default necessarily alters a party's legal, equitable, and contractual rights under a contract. However, the cure of default and reinstatement of a mortgage is clearly contemplated by § 1124 of the Bankruptcy Code and is in furtherance of the Congressional purpose of allowing debtors to reorganize. The fact that a debtor may cure and reinstate a mortgage does not mean that a debtor may otherwise alter legal, equitable, or contractual rights between it and its creditor. Midland alleges

this title, that occurred before or after the commencement of the case under this title;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;

(C) compensates the holder of such claim or interest for any damages incurred as a result of

any reasonable reliance by such holder on such contractual provision or such applicable law; and

(D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest; or

that the debtor's attempt at cure in the instant case is effecting more than a cure and reinstatement, and therefore is affecting other rights between the parties. Specifically, Midland is concerned with the recovery of attorney's fees arising out of the debtor's default.

There are three possible bases for Midland's recovery of attorney's fees in the instant case. Initially, Midland seeks to recover attorney's fees under Official Code of Georgia § 13–1–11, as provided for in the subject mortgage and note. The Court notes at this time that Midland's final letter to the debtor was sufficient to comply with the provisions of Official Code of Georgia § 13–1–11. In the alternative, Midland seeks the recovery of attorney's fees under 11 U.S.C. § 506(b), which provides that where a secured creditor is oversecured, it shall be entitled to interest and other reasonable charges provided under the agreement under which its claim arises. The last manner in which Midland may recover attorney's fees is as compensation for damages arising out of the debtor's default. (11 U.S.C. § 1124(2)(C)).

The question of the treatment of "statutory attorney's fees" under the bankruptcy laws of the United States has been examined from many directions. See e.g. *National Acceptance Company v. Zusmann*, 379 F.2d 351 (5th Cir.1967); *In the Matter of Atlanta International Raceway, Inc.*, 513 F.2d 546 (5th Cir.1975); *In re East Side Investors*, 694 F.2d 242 (11th Cir.1982) Petition for rehearing denied 702 F.2d 214 (11th Cir.1983); *United States v. Allen*, 699 F.2d 1117 (11th Cir.1983). The debtor has stated that it would pay Midland $6,000.00 in attorney's fees in spite of the fact that the debtor believes that Midland is entitled to recover attorney's fees only on the amount of the debt actually collected "by and through an attorney", this amount being the payment of arrearages of approximately $56,000.00 existing at the time of the confirmation hearing. *East Side Investors,*

*supra,* addresses this contention of the debtor.

In *East Side Investors, supra,* the mortgage holder commenced a foreclosure proceeding prior to the filing of a bankruptcy petition. In conjunction with the acceleration of the mortgage note in *East Side Investors,* the debtor was informed of its right to avoid the payment of 10% of principal and interest as attorney's fees by payment in full of its outstanding obligation within ten days of receipt of this notice. More than ten days elapsed after the receipt of this notice by the debtor.[2] Thereafter, the debtor filed a bankruptcy petition to stop the foreclosure of its property. The question the Court addressed in *East Side Investors* was whether there had been collection of the subject note by and through an attorney within the meaning of Ga.Code § 20–506 (currently Official Code of Georgia § 13–1–11).

The Court in *East Side Investors* concluded that the bankruptcy stay which restrained the creditor from consummating its foreclosure sale was not a bar to finding that the subject note was collected by and through an attorney. The specific basis for this conclusion was that the creditor in *East Side Investors* was able to collect its debt through the debtor's Chapter XII proceeding pursuant to the provisions of a consent decree entered by the parties after the commencement of the debtor's bankruptcy proceeding. This consent order provided for the payment to the creditor in *East Side Investors* of the "full amount of principal due under the notes as well as the interest accrued and accruing." A cursory examination of *East Side Investors* indicates that the debtor's contention that it is obligated for statutory attorney's fees based solely on the amount of arrearages to be paid on the effective date of the plan has little merit. However, the main distinguishing factor between *East Side Investors* and the case *sub judice* lends support to a variance of the debtor's claim.

**2.** If the debtors had filed their bankruptcy petition prior to the expiration of this ten-day period, they would have avoided the attachment of statutory attorney's fees. *In re Atlanta International Raceway, Inc.,* 513 F.2d 546, 552, footnote 13 (5th Cir.1975).

The key factor which distinguishes this case from *East Side Investors* is the fact that the debtor herein is seeking to cure and reinstate its mortgage, whereas in *East Side Investors* the debtor entered into a consent order which provided for the payment of principal and interest to the secured creditor therein.[3] Cure and reinstatement is not equivalent to being cashed out or to receiving payment under a plan of reorganization. The Court of Appeals appears to recognize this distinguishing factor in its April 4, 1983 Order denying the debtor's application for rehearing in *East Side Investors.*

The proper treatment of the cure and reinstatement of a mortgage has been addressed by the United States Court of Appeals for the Second Circuit in *In re Taddeo,* 685 F.2d 24, 9 B.C.D. 556, 6 C.B.C.2d 1201 (2d Cir.1982). In *Taddeo,* the Second Circuit affirmed the holdings of the Bankruptcy Court and the District Court, which holdings allowed a debtor to deaccelerate and cure a mortgage default under the debtor's Chapter 13 plan. The Court stated therein that

> "Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of 'cure' used throughout the Bankruptcy Code. Under § 365(b), the trustee may assume executory contracts and unexpired leases only if he cures defaults—but the cure need address only the individual event of default, thereby repealing the contractual consequences." [cites omitted] *Taddeo* 685 F.2d 24, 9 B.C.D. at 558, 6 C.B.C.2d at 1205.

The provisions of § 365 of the Bankruptcy Code concerning cure of defaults are substantially similar to the provisions of 11 U.S.C. § 1124(2).

The language which the Second Circuit Court of Appeals employed in *Taddeo* establishes that a cure of default and reinstatement of a mortgage is deemed to re-turn the parties to a point prior to any default. If there has been no default, there can be no acceleration, and therefore no request for attorney's fees arising out of that default and acceleration. This Court concludes that statutory attorney's fees, as contemplated by Official Code of Georgia § 13–1–11 do not become a lien against secured property where a default on an underlying obligation is cured and reinstated pursuant to the provisions of the Bankruptcy Code. This determination is consistent with both the rehabilitative purposes of Chapter 11 and Chapter 13 of the Bankruptcy Code.

The concept of cure and reinstatement of a mortgage as a method for the avoidance of statutory attorney's fees has been tangentially addressed by the Eleventh Circuit Court of Appeals in the case of *United States v. Allen,* 699 F.2d 1117 (11th Cir., 1983). In *Allen,* the Farmers Home Administration of the Department of Agriculture ("FMHA") sought to pay the senior lienholder on certain property in which the FMHA held a junior lien to avoid the attachment of statutory attorney's fees for the debtor's failure to pay the principal amount of its debt within ten days of receipt of notice of the first mortgage holder's acceleration of the subject debt. The issue in *Allen* was whether the senior lienholder had collected its debt by or through an attorney within the ambit of Official Code of Georgia § 13–1–11. The Court found that merely sending a letter drafted by an attorney was collection by and through an attorney and that a debt not need actually be sued upon in order to collect attorney's fees. In footnote 4 of the Court of Appeals Order, the Court addressed the case of *In re Wilder,* 22 B.R. 294 (Bkrtcy.M.D.Ga.1982) and stated that it disapproved of the reasoning contained in that case concerning attachment of attorney's fees.

In *Wilder,* the Bankruptcy Court stated that because the creditor's lawyer in *Wilder*

---

**3.** This consent order established the priority and amount of the creditor's lien as well as payment under the debtor's plan of arrange-ment not yet proposed. *In re East Side Investors,* 7 B.R. 515, 516 (N.D.Ga.1980).

had undertaken no action which a non-lawyer could not have undertaken in attempting to recover a mortgage obligation for its client, the subject debt was not collected by and through an attorney as that phrase is used in Georgia Code § 20–506 (Official Code of Georgia § 13–1–11). This determination was based on the District Court's opinion in *United States v. Allen,* which opinion was reversed by the Eleventh Circuit Court of Appeals. The Bankruptcy Court in *Wilder* did not address the question of whether a cure and reinstatement under 11 U.S.C. §§ 1322(b)(3) and (b)(5) would operate to return the parties to a pre-default position (see discussion of *Taddeo, supra*), thereby removing the conditions which gave rise to the mortgage holder's right to seek attorney's fees in the first instance. Accordingly, the Court of Appeals' disapproval of *Wilder* was not concerned with the question of the effect of a cure and reinstatement of a mortgage and its effect on the right to statutory attorney's fees in the context of a reorganization proceeding.

■ The second method by which Midland may obtain attorney's fees is pursuant to the provisions of 11 U.S.C. § 506(b).[4] Section 506(b) of the Bankruptcy Code clearly authorizes the payment of attorney's fees or other charges to an oversecured creditor to the extent these charges are authorized "under the agreement under which such claim arose." The total fees and costs which Midland seeks under § 506(b) are $21,293.17. In the instant case, Midland is substantially oversecured. Therefore, Midland is entitled to reasonable attorney's fees as provided under its mortgage and note. See *In re Anderson,* 28 B.R. 231 (Bkrtcy.N.D.Ga.1983). The amount of these fees is subject to a reasonableness standard. Also, the determination of the amount of attorney's fees is subject to the holdings of *In re First Colonial Corporation of America,* 544 F.2d 1291 (5th Cir.1977);

cert. denied 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 588 (1977) which incorporates *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). *In the Matter of Scarboro,* 13 B.R. 439, 4 CBC 2d 1222 (M.D. Ga.1981).

The last method by which a creditor may obtain attorney's fees and costs arising out of the cure of default and reinstatement of a mortgage is under those provisions which require compensation for damages incurred as a result of said default. 11 U.S.C. §§ 1124(2)(C) and 365(b)(1). Even if a creditor is undersecured, where a debtor seeks to reinstate a mortgage, a creditor would be entitled to compensation for its actual pecuniary losses, including attorney's fees, arising out of the default.

■ At the December 1, 1982 hearing, no evidence was presented concerning the reasonableness of the various fees and charges which Midland seeks. The right to the recovery of actual pecuniary losses where a default is cured contemplates good faith and reasonableness on the part of a creditor in protecting its interest. Therefore, while the Court recognizes that Midland is entitled to reasonable attorney's fees and costs incurred arising out of the debtor's default, the Court reserves ruling on the amount of these attorney's fees and costs pending an evidentiary hearing on this subject.

■ Midland has also argued that as part of the compensation for damages incurred due to the debtor's default, it receive a market interest rate on mortgage arrearages and that its mortgage be reinstated at a market interest rate and not the contract rate. Midland's argument that it is entitled to market interest on the mortgage arrearage has merit. The opportunity cost to Midland of the use of the unfunded monthly mortgage obligation by the debtor is a damage for which compensation is contemplated under § 1124 of the Bankruptcy

---

**4.** (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.

Code. However, the compensation which § 1124 considers must arise out of reasonable reliance by a creditor on contractual provisions or other related law. 11 U.S.C. § 1124(2)(C). In the instant case, Midland has not argued that the subject mortgage and note provide for interest at a market rate as opposed to a pre-determined contractual rate. Accordingly, the Court finds that the contract rate, and not the market rate, is the correct interest rate to be charged a debtor on arrearages which are paid a creditor in connection with a cure of default and reinstatement of a mortgage.

■ The reasoning contained in the preceding paragraph is equally applicable to Midland's claim that its mortgage, if reinstated, be reinstated at the prevailing market interest rate and not at the contractual interest rate. Furthermore, Midland's argument, if accepted, would work a result which is contrary to the policy underlying the provisions of the Bankruptcy Code which allow the cure and reinstatement of a mortgage. Language in *In re Riveroak Investment Corporation,* 9 B.R. 1 (Bkrtcy.S.D. Fla.1980), on which Midland relies in support of this contention, would allow the Court to authorize an adjustment of contractual interest to provide compensation for losses incurred by a default, but does not require it.

> "No mortgagee should be required to surrender his election to accelerate the mortgage, after default, without such compensation or without an agreement to adjust the interest to the current level." *Riveroak* at p. 2.

Furthermore, in *Riveroak,* the above language did not constitute the holding of the Court because in *Riveroak,* no mortgage was reinstated and the creditor was allowed to foreclose on its property.

## CONFIRMATION

11 U.S.C. § 1129(a)(10) requires that at least one class of claims accept a plan before a Court may confirm a plan. 11 U.S.C. § 1126(f) provides that

"a class that is not impaired under a plan is deemed to have accepted the plan ..."
11 U.S.C. § 1124 addresses the impairment of claims or interests and states that the cure and reinstatement of a contract, lease, or mortgage on which there has been a default leaves the subject creditor unimpaired. The preceding section of this Order has addressed the question of whether, and how, the debtor may cure its default on its obligations to Midland. The Court has concluded that the debtor may cure the default on its obligations to Midland and reinstate its mortgage. Accordingly, Midland is unimpaired within the purview of §§ 1124 and 1126(f) of the Bankruptcy Code. The question which the Court must therefore address is whether an unimpaired class which is deemed to have accepted the plan, even though it affirmatively rejects the plan, has accepted the plan for purposes of § 1129 of the Bankruptcy Code.

*In the Matter of Perimeter Park Investment Associates, Ltd.,* 697 F.2d 945 (11th Cir.1983) addresses the question before the Court in the context of a Chapter XII proceeding under the Bankruptcy Act. In *Perimeter Park,* a sole secured creditor was "crammed down" under the provisions of § 461(11) of the Bankruptcy Act.[5] Section 461(11) of the Bankruptcy Act enabled a debtor to compel a creditor to be bound to a plan of arrangement which the creditor was unwilling to accept by providing that creditor with adequate protection of its interest in the debtor's property. The issue before the Court in *Perimeter Park* was whether this provision which provided adequate protection could be employed to enable a debtor to obtain confirmation of a plan of arrangement where the debtor's sole creditor affirmatively rejects the plan, with no creditor therefore able to accept a plan under § 468 of the Bankruptcy Act. The Court in *Perimeter Park* determined that providing a creditor with adequate protection, even when there are no acceptances, deemed or otherwise, by any creditor of the debtor's plan, will allow confirmation of a Chapter XII plan of arrangement.

---

**5.** The Bankruptcy Act was repealed on October 1, 1979, the date the Bankruptcy Reform Act of 1978, Title 11 of the United States Code, Bankruptcy, went into effect.

■ The instant case is almost identical to *Perimeter Park* with regard to the question of whether the debtor's plan may be confirmed. The legal questions involved are different, but the result is the same. In the instant case, as in *Perimeter Park,* the debtor is attempting to overcome the objection to confirmation of its plan by its sole secured creditor, who also is its sole creditor, except for minor trade debt and taxes. As in *Perimeter Park,* the debtor is not attempting to remove the lien of its secured creditor, nor is it proposing to pay its secured creditor less than the amount of its debt. *Perimeter Park, supra,* at 953, footnote 9. The distinguishing factor between *Perimeter Park* and the case *sub judice* is the fact that the secured creditor and the debtor in *Perimeter Park* presented substantially identical plans of reorganization. This distinction is not significant in view of the Eleventh Circuit's clear statements that accepting the secured creditor's proposition in *Perimeter Park* would produce an absurd result. *Perimeter Park, supra,* at 949.

The Court notes that the Bankruptcy Reform Act of 1978 was intended to liberalize reorganization provisions when compared with those contained in its predecessor bankruptcy laws such as Chapter X, XI, and XII. Even if there is some question concerning the proper use of § 461(11) in a Chapter XII plan of arrangement, there is no question that the proper interpretation and interplay of §§ 1124, 1126(f), and 1129(a)(10) of the Bankruptcy Code allow the Bankruptcy Court to confirm a plan of reorganization where § 1129(a)(10) consent is deemed consent under § 1126(f).

Midland has directed the Court to the case of *In re Marston Enterprises,* 13 B.R. 514 (Bkrtcy.E.D.N.Y.1981), in support of the proposition that deemed acceptance under § 1126(f) is insufficient to meet the requirements that one class of claims has accepted a plan under 11 U.S.C. § 1129(a)(10). For the reasons stated above, this Court rejects the reasoning of *Marston* and its progeny.

Accordingly, for the above-stated reasons, the Court finds that the debtor may cure and reinstate its mortgage with Midland. The Court reserves ruling on the amount of attorney's fees to be awarded to Midland arising out of the cure of default and reinstatement of its mortgage, as well as on the question of the extent of deferred maintenance which the debtor must complete to effect a cure of its default. The relief Midland seeks in its complaint for relief from stay is denied and the debtor's motion for sanctions under Federal Rule of Civil Procedure 37 is denied.

IT IS THEREFORE ORDERED AND ADJUDGED that the plan of reorganization presented by Masnorth Corp. complies with the provisions of 11 U.S.C. § 1129(a), and therefore this plan is confirmed.