**David LEBOUTILLIER, Plaintiff,**

v.

**AIRLINE PILOTS ASSOCIATION, INTERNATIONAL AND TRANS WORLD AIRLINES, INC., Defendants.**

Civ. A. No. 83–3841.

United States District Court, District of Columbia.

Nov. 21, 1984.

Robert F. Gore, National Right to Work Legal Defense Foundation, Inc., Springfield, Va., for plaintiff.

Gary Green, Sarah Perry Fleischer, Air Line Pilots Association, Inc., Washington, D.C., for defendant ALPA.

Michael A. Katz, New York City, Elliot A. Shaller, Dow, Lohnes & Albertson, Washington, D.C., for defendant TWA.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

 This is an action by a former pilot-employee of Trans World Airlines (TWA) against that airline and against the Air Line Pilots Association (ALPA)[1] for reinstatement[2] and other relief. Presently before the Court are defendants' motions for summary judgment.

## I

TWA and ALPA have for many years been operating under an "agency shop" agreement which requires those TWA pilots who are not members of the union to pay to that organization a service charge equivalent to the regular union dues. See section 25 of the current agreement between TWA and ALPA. As a non-member of ALPA, plaintiff was required to pay this charge. However, as one who regards himself as a dissenter from the imposition of this kind of charge,[3] plaintiff has made his displeasure with the fee known by being repeatedly delinquent in his payments and then, at almost literally the last minute, when the union was recommending his discharge or when the discharge was about to become final, making up the delinquency.[4]

These controversies came to a head in June 1983. On April 12 of that year, ALPA advised plaintiff that his account was delinquent in the amount of $386.38, and that under the agreement, unless payment was received within fifteen days, the union would request his discharge.[5] Plaintiff took no action. On May 25 ALPA requested TWA to discharge him, and on June 8 and 9, the company advised plaintiff of his termination effective June 22.

On June 17 and June 23, plaintiff sent in two checks to cover the delinquency, but this fact did not become known to the union staff until June 24. In the meantime, TWA had terminated plaintiff's employment. On June 24, as soon as the union learned that a check had been received prior to the critical date—June 22—it requested TWA to reinstate plaintiff. However, before the company took the necessary action, the union further learned that both checks sent in by plaintiff had been dishonored by the bank for lack of sufficient funds, and, in order to have time to study what it should do next, it requested TWA to withhold plaintiff's reinstatement until further notice. Eventually,[6] ALPA advised plaintiff that it

1. The action against ALPA proceeds on the theory that the union violated its duty of fair representation under 45 U.S.C. § 152. That theory is not available to plaintiff, however, for the duty of fair representation extends only to union representation vis-a-vis the employer. See *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Where, as here, the union member's dispute is with the union itself, the fair representation principle has no application. See *Kolinske v. Lubbers*, 712 F.2d 471, 481 (D.C. Cir.1983). Plaintiff's action against ALPA is therefore subject to dismissal on this basis alone.

2. As explained below, plaintiff was discharged on June 22, 1983.

3. Plaintiff does not contest the legality of this kind of agreement. However, he was one of several plaintiffs in *Bagnall v. ALPA*, 626 F.2d 336 (4th Cir.1980), who challenged the method by which the service charge was being calculated.

4. Disputes regarding plaintiff's obligations occurred in the Spring of 1976, in July 1977, February 1978, June-July 1982, November 1982, and the Spring of 1983.

5. Sections 25(B) and (C) of the ALPA–TWA agreement provide that if a pilot who has received notice of delinquency does not remit or tender the required payment within fifteen days, the union "shall certify in writing [that he is delinquent] and is therefore to be discharged ... [and the company] shall thereupon take proper steps to discharge such pilot...."

6. In the meantime, plaintiff tendered yet a third check (which was not dishonored). In order to give plaintiff an opportunity to explain or to justify his repeated failure to pay his service charges in a timely manner, ALPA requested

would not request his reinstatement, and this lawsuit followed.

## II

Sections 25(D) and (E) of the agreement between TWA and ALPA provide that a pilot who believes that his discharge for failure to pay the service charge obligation was improper may invoke a protest procedure. That procedure includes an appeal to the TWA vice president for labor relations, to be followed by a hearing before a neutral arbitrator. During the protest procedure, the employee retains his employment. Neither after his discharge on June 22 nor after the failure of the union to request his reinstatement in July, did plaintiff invoke the contractual remedies.

■ National labor policy favors the resolution of disputes such as these through contractually-negotiated mechanisms, and the failure to employ such mechanisms acts as a bar to litigation. See *Clayton v. UAW*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976).

In his opposition to the motion for summary judgment, plaintiff offered no explanation or excuse for his failure to exhaust his contractual remedies other than to

plaintiff to appear at a meeting on August 23, 1983. At that meeting, plaintiff stated that he had a "dislike" for the union and that the "only way [he] could express [his] frustration ... was to delay payment of what [he] owed them". Transcript of meeting at 38 (ALPA's Exhibit 1).

7. At oral argument on the motion for summary judgment, counsel for plaintiff also relied on Exhibit O (Memorandum from Hilly, TWA's Vice President of Labor Relations, to Hoar), but it is not apparent what light that document sheds on the issues before the Court. The subject matter of this memorandum, written over ten months before plaintiff was discharged, was ALPA's administration of section 25 of the collective bargaining agreement. Based on discussions with Gary Green, ALPA's in-house general counsel, Hilly described ALPA's practice concerning delinquent pilots, as follows:

(I)t has always been ALPA's position if the delinquent pilot pays his service obligation *prior to the effective date of his termination,*

question whether he needs to do so when defendants have allowed other delinquent pilots to cure their agency fee problems without utilizing those remedies.[7] Even assuming that plaintiff's premise is correct (but see note 9, *infra*), it would not excuse his failure to employ the contractual procedure, for it is precisely issues such as these that should be submitted to those most familiar with labor-management relations in the particular industry or company rather than being taken directly to the courts. See, *e.g., Washington Hospital Center v. Service Employees International Union,* 746 F.2d 1503 (D.C.Cir.1984). Nor could it reasonably be argued that resort to the procedures would have been futile in this case because of the presumed hostility of the decision-makers.[8] The agreement between TWA and ALPA establishes a system of expeditious dispute resolution by arbitrators who are entirely neutral.

Since plaintiff failed to exhaust his contractual remedies, his action in court is subject to dismissal.

## III

On the merits—assuming *arguendo* that the Court may properly reach the merits— plaintiff fares no better.

ALPA would rescind the notice of termination. Mr. Green advised me that the law in this regard required the Union to rescind the notice of termination if the pilot *tendered his service fee payment on or before the effective date of the proposed termination.* Consequently, although Section 25 provides for a 15 day grace period before the notice of termination, a pilot's failure to clear the delinquency during that grace period does not prevent him from tendering payment after he has received from the Company a letter of termination. (Emphasis supplied).

Plaintiff clearly does not fall within this scenario for he did not tender payment until July 5, 1984—almost two weeks *after* his termination became effective. See *United States v. Allen,* 699 F.2d 1117, 1122 (11th Cir.1983) ("(A) check written on insufficient funds does not constitute valid legal tender despite the drawer's willingness to deposit funds to cover the check.").

8. *Clayton v. UAW, supra,* 451 U.S. at 689, 101 S.Ct. at 2095.

Plaintiff's case rests on two contentions.[9] First, he argues that he should not have been discharged on June 22 because he had sent in his check prior to that time. That argument, of course, overlooks the fact that the check was a worthless piece of paper for there were no funds in the bank to back it.[10] Second, he contends that his discharge should have been rescinded when on June 24 the union learned that he had previously mailed in two checks. The short answer is that the union did just that: they immediately requested plaintiff's reinstatement. That reinstatement request was halted in its tracks, and properly so, both by the union and by TWA, when it was discovered that plaintiff's two checks were worthless. If plaintiff was to be reinstated, notwithstanding his game-playing, it was up to him to carry the reinstatement process forward by invoking the contractual protest procedure. Having once again created a confusing situation in his desire to frustrate the agency fee process, plaintiff could not sit back, expect the union and the company on their own to extricate him and, upon their failure to do so, expect the Court to award him damages.

The motions for summary judgment filed by both ALPA and TWA will be granted.

9. Plaintiff also argues that defendants treated him differently from other similarly situated pilots because of his determined resistance to the agency fee process. However, not only is the motivation of defendants irrelevant as long as they correctly followed the proper contractual procedure and afforded plaintiff all of his contractual rights, but the record clearly shows that no other pilot had a history of delinquency with respect to the payment of fees or otherwise that was remotely comparable to plaintiff's.

10. Plaintiff acknowledges this to be so, but he contends that the union did not know that the check was worthless, and that they must therefore be deemed to have acted improperly. But if the Court is to inquire as to what the union knew or did not know, the uncontradicted fact is that the union personnel did not know that a check had been received on June 21, that is, before his discharge became effective.